984 So.2d 139 (2008)
Gordon HACKMAN and Gordon Hackman Law Corporation
v.
EMC INSURANCE COMPANY.
No. 07-CA-552.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 2008.
Gordon L. Hackman, Attorney at Law, Orleans, Louisiana, for Plaintiff/Appellant.
Brian A. Homza, Lila J. Knicely, Cook, Yancey, King & Galloway, Shreveport, Louisiana, for Defendant-Appellee.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS and GREG G. GUIDRY.
*140 CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
Plaintiff, Gordon Hackman ("Hackman"), owned a building located in St. Charles Parish. On May 16, 2003, the building was partially destroyed by fire. The building was insured by Employers Mutual Casualty Insurance Company ("EMC"). Hackman notified EMC of the loss due to fire and a formal Proof of Loss was mailed on June 9, 2003 and received by EMC on June 13, 2003.
EMC tendered a check to Hackman in the amount of $64,775.07. The check was sent via U.S. mail and received by Hackman by July 15, 2003. This check indicated it was for "fire loss less $7,294.62 depreciation and $1,000.00 deductible."
On August 7, 2003, Hackman returned the original check for $64,775.07 to EMC advising of a change in the mortgagee. On August 18, 2003, EMC sent Hackman a replacement check with the new mortgagee's name. Hackman then sold the building "as is" on January 28, 2004, without making any repairs to the building.
Hackman then filed a Petition in Suit for Fire Contract Damages against EMC on April 20, 2004. Hackman alleged that EMC failed to pay timely and refused to pay the market value of the repairs or the actual amount of the damage to the building and instead deducted "depreciation". Hackman sought to recover the actual amount of the damages to the building, lost rental, and sanctions of penalties and attorneys' fees.
On August 11, 2006, EMC then filed a Motion for Summary Judgment. First, EMC contended it timely tendered payment on the building. EMC claimed the first tender was sent within thirty days of the June 13, 2003 Proof of Loss, and when Hackman informed EMC of the change of mortgagee, EMC immediately forwarded a new check.
Second, EMC argued that under the policy, Hackman was not entitled to the $7,294.62 for "depreciation" because he did not complete the repairs to the building. EMC asserted that the policy is a standard fire policy with replacement cost coverage and that the policy provides that replacement cost is paid on the building once repairs are completed. EMC contended it must only pay fair market value, which includes a deduction for depreciation, until repairs were completed. Hackman did not make the repairs to the building, so EMC argued he was not entitled to the $7,294.62 depreciation amount. EMC also argued that Hackman was not entitled to the $1,325.65 penalties on the depreciation amount that he was seeking since EMC did not arbitrarily withhold payment to Hackman.
Finally, EMC argued it had paid the out-of-pocket cleaning expenses to Hackman within thirty days. He mailed an estimate on June 9, 2003 and it was received by EMC on June 13, 2003. Hackman then sent more materials to EMC in September 2003, and EMC paid within thirty days of receipt of that extra material. Therefore, EMC argued it owed no penalties.
Hackman filed an opposition to EMC's motion and filed his own motion for summary judgment on September 20, 2005. He argued that La. R.S. 22:691 requires full payment to the insured of actual cash value in full amount to repair or replace damaged property for all direct loss by fire. He argues EMC's policy did not conform to the statute and EMC did not pay the actual cash value, and instead incorrectly subtracted "depreciation".
Both motions for summary judgment were heard by the trial court on November 20, 2006. The trial court rendered judgment *141 in open court. The trial court stated that the summary judgment motions by both sides regarding clean-up costs were denied because of genuine issues of material fact. The trial court granted the motion for summary judgment by EMC on all other issues. With regards to the timeliness of payment, the trial court stated that the insurance company mailed payment within thirty days, and even if Hackman received the check on day thirty-one, the insurance company was not arbitrary and capricious and without probable cause. Therefore, the trial court found that EMC owed no penalties. The trial court also noted that the insurance company could not make complete payment on the claim until it knew who the proper bank was.
The trial court also found that the policy in question allows EMC to hold back certain repair amounts until proof of the repair or replacement of items was made. The trial court noted that Hackman did not make the repairs before selling the building, therefore, EMC was not obligated to pay the amount held back.
A written judgment was signed by the trial court on January 30, 2007 providing that the motion for summary judgment by Hackman was denied and the motion for summary judgment by EMC was granted in part and denied in part. All claims of Hackman for penalties and attorneys' fees regarding the timeliness of EMC's payment for damages to the building were dismissed with prejudice. Hackman's claim for payment of the depreciation amount on the building was dismissed with prejudice. Hackman's claim for penalties on EMC's refusal to pay the hold back until building repairs were made was also dismissed with prejudice. EMC's motion for summary judgment regarding Hackman's claim for penalties and attorneys' fees based on cleaning cost not being timely paid was denied. The trial court designated the judgment as a final, appealable judgment.
Hackman now appeals. For the reasons which follow, we affirm the trial court's judgment.

DISCUSSION
On appeal, Hackman argues four assignments of error. First, he argues the trial court erred in failing to apply the plain terms of the Fire Statute requiring EMC to insure and pay actual cash value of the loss from all direct loss by fire without deduction for "depreciation" and without deduction of a deductible. Next, Hackman argues the trial court erred in failing to find EMC breached its obligation to pay within thirty days from proof of loss. Third, Hackman argues the trial court erred in granting summary judgment based on disputed facts. And finally, Hackman argues the trial court erred in failing to award penalties and attorneys' fees.
The EMC policy issued to Hackman provides the following as it relates to payment on a loss claim:
6. Loss Payment
In the event of loss or damage covered by this policy:
a. At our option, we will either:
(1) Pay the value of lost or damaged property;
(2) Pay the cost of repairing or replacing the lost or damaged property;
(3) Take all or any part of the property at an agreed or appraised value; or
(4) Repair, rebuild or replace the property with other property of like kind and quality.
b. We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

*142 c. We will not pay you more than your financial interest in the Covered Property.
d. We will determine the value of Covered Property as follows:
(1) At replacement cost (without deduction for depreciation, except as provided in (2) through (7) below.
(a) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.
(b) We will not pay on a replacement cost basis for any loss of damage:
(i) Until the lost or damaged property is actually repaired or replaced; and
(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
(c) We will not pay more for loss or damage on a replacement cost basis than the least of:
(i) The cost to replace, on the same premises, the lost or damaged property:
i. Of comparable material and quality; and
ii. Used for the same purposes; or
(ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.
(2) If the "Actual Cash Value  Buildings" option applies, as shown in Declarations, paragraph (1), above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.
Therefore, according to the policy, EMC will not pay on a replacement cost basis, until the damaged property is actually repaired and the repairs are made as soon as reasonably possible after the loss. Hackman claims EMC violated La. R.S. 22:691 by withholding "depreciation" from the amount it paid him. La. R.S. 22:691, in pertinent part, provides:
§ 691. Fire insurance contract; standard provisions; variations
A. The printed form of a policy of fire insurance, as set forth in Subsection F shall be known and designated as the "standard fire insurance policy of the State of Louisiana."
B. No policy or contract of fire insurance shall be made, issued or delivered by any insurer, or by any agent or representative thereof, on any property in this state, unless it shall conform as to all provisions, stipulations, agreements and conditions, with such form of policy.
. . . .
F. The form of the standard fire insurance policy of the state of Louisiana (with permission to substitute for the word "company" a more accurate descriptive term for the type of insurer) shall be as follows:
(1) FIRST PAGE OF STANDARD FIRE POLICY
No.
(Space for insertion of name of company or companies issuing the policy and other matter permitted to be stated at the head of the policy.)
(Space for listing amounts of insurance, rates, and premiums for the basic coverages insured under the standard form of policy and for additional coverages or perils insured under endorsements attached.)
In consideration of the provisions and stipulations herein or added hereto and of ______ dollars premium this company, for the term of _____ from the _____ day of _____ 20__, to the *143 _____ day of _____ 20__, at 12:01 a.m. Standard Time, at location of property involved, to an amount not exceeding _____ _____ dollars, does insure _____ and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the insured, against all DIRECT LOSS BY FIRE, LIGHTNING, AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described hereinafter while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.
According to this statute, the fire policy must insure to the extent of the actual cash value of the property, but not exceeding the amount to repair or replace the property with material of the like kind and quality. EMC's policy issued to Hackman provides that EMC will not pay on a replacement cost basis until the repairs are actually made. So, until the repairs are actually made, EMC owes only the actual cash value, which, is what the statute requires. Under Louisiana law, "actual cash value" is defined as the reproduction cost less depreciation. Real Asset Management Inc. v. Lloyd's of London, 61 F.3d 1223 (5 Cir.1995).
Therefore, we find that EMC has complied with this statute and with the language in its policy issued to Hackman in its payment of the actual cash value on Hackman's claim. EMC retained Rester Claim Service, L.L.C. to provide an estimate of the total replacement cost for Hackman's building, as well as the depreciation cost. That estimate indicated a total replacement cost of $72,069.69, which represented a deduction for the $1,000.00 deductible, and a depreciation amount of $7,294.62. Therefore, the actual cash value was $64,775.07, which represented the total replacement cost minus the depreciation.
The check tendered to Hackman by EMC was in the amount of $64,775.07, which is the actual cash value. Hackman did not make any of the repairs to the building before selling it. According to the policy, Hackman would have received the remaining depreciation amount of $7,294.62 if he had made the repairs to the building. Therefore, we find EMC properly tendered only the actual cash value amount of $64,775.07 to Hackman, in accordance with his policy and La. R.S. 22:691.
Additionally, we find EMC timely tendered payment to Hackman and, therefore, the trial court correctly granted summary judgment in favor of EMC. The Proof of Loss was received by EMC on June 13, 2003. The check was mailed to Hackman and received by him no later than July 15, 2003. La. R.S. 22:658 provides, in pertinent part:
§ 658. Payment and adjustment of claims, policies other than life and health and accident; personal vehicle damage claims; penalties; arson-related claims suspension
A. (1) All insurers issuing any type of contract, other than those specified *144 in R.S. 22:656, 657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim 47 due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.
. . . .
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
. . . .
We agree with the trial court that even if the check was not received by Hackman until July 15, 2003, the thirty-first day after receipt of the Proof of Loss by EMC, EMC was not arbitrary and capricious in failing to timely pay. We also note that once Hackman sent the check and a letter back to EMC on August 7, 2003, informing EMC of the change of mortgagee, EMC quickly issued and mailed a new check to Hackman. The new check was dated August 18, 2003. We find that, according to La. R.S. 22:658, the actions of EMC do not warrant an award of attorney fees or penalties to Hackman.
Accordingly, we affirm the judgment of the trial court granting summary judgment in favor of EMC.
AFFIRMED.