CRAIN, J.
lgThe plaintiff in this proceeding alleges that an insurer is liable for statutory penalties and attorney fees for failing to time*ly pay a final judgment. The insurér filed a motion for summary judgment contending that the asserted penalty statutes do not apply to the payment of a judgment or, alternatively, that the judgment was timely paid. The trial court granted summary judgment and dismissed the suit with prejudice. We affirm.
FACTS
After sustaining injuries in an automobile accident, Byard Edwards, Jr. filed suit seeking to recover underinsured motorist (UM) benefits under a policy of insurance issued to him by Louisiana Farm Bureau Mutual Insurance Company. That proceeding, referred .to hereinafter as the “ÜM suit,” resulted in a jury verdict in favor of Edwards in the amount of $820,000.00. After deducting a pre-suit tender by Farm Bureau, the net amount of the judgment in favor of Edwards and against Farm Bureau was $410,000.00, plus legal interest (sometimes referred to herein as the “UM judgment”). Farm Bureau suspensively appealed, and this court reduced the principal amount of the UM judgment to $210,000.00. See, Edwards v. Louisiana Farm Bureau Mutual Insurance Company, 12-1495 (La.App. 1 Cir. 4/26/13), 2013 WL 1790996, writ denied, 13-1175 (La.8/30/13), 120 So.3d 269. In a related appeal, this court affirmed, as amended, a judgment awarding costs to Edwards in the amount of $24,502.78. See Edwards v. Louisiana Farm Bureau Mutual Insurance Company, 13-0186 (La.App. 1 Cir. 12/27/13), 2013 WL 7122542.
Edwards instituted the present proceeding seeking to recover statutory penalties and attorney fees from Farm; Bureau after it failed to pay the UM | Judgment within 30 days of the judgment becoming final. Edwards later amended his petition to additionally allege that the judgment was not paid within sixty days of the judgment becoming final., According to the petition, the UM judgment constituted satisfactory proof of loss, and Farm Bureau arbitrarily and capriciously failed to pay it. Edwards sought an award of penalties and attorney fees pursuant to Louisiana Revised Statutes 22:1892 and 22:1973, which obligate an insurer to pay any “claim” due to’ an insured within stipulated time delays. See La. R.S. 22:1892A(1) and B(l); La. R.S. 22:1973B(5).
Farm Bureau-answered and subsequently filed a motion for- summary judgment seeking to have the suit dismissed on the basis that Sections 22:1892 and 22:1973 do not apply to the' payment of a' judgment, or, alternatively, that the judgment was timely paid. The pleadings and the exhibits submitted with the motion establish that, while the UM judgment became final and definitive on September 14, 2013, it was not paid until January 14, 2014.
The record reflects that the payment of the UM judgment was complicated by multiple seizures of Edwards’ interest in the UM suit by third-party creditors. Farm Bureau filed, a concursus proceeding, which was dismissed pursuant to an exception filed by Edwards, Farm Bureau then forwarded a check made jointly payable to Edwards, his attorney, and the third-party claimants, but the check was returned by Edwards with a demand that Farm Bureau pay the full amount of the judgment to him and his attorney, or pay the attorney his fees and costs and deposit the balance of the judgment into the registry of the court. Eventually, the interested parties- agreed on a distribution of the proceeds, and the UM judgment was paid in full on January 14,2014.
*994 LFarm Bureau’s motion for summary-judgment proceeded to a hearing, and the trial court granted the motion. A judgment was signed that dismissed the case with prejudice, and Edwards appealed.
DISCUSSION
A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. Code Civ. Pro. art. 966B(2). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. See La. Code Civ. Pro. art. 966A(2). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. In re Succession of Beard, 13-1717 (La.App. 1 Cir. 6/6/14), 147 So.3d 753, 759-60. The interpretation of a statute is a question of law that may be decided by summary judgment. Louisiana Workers’ Compensation Corporation v. Landry, 11-1973 (La.App. 1 Cir. 5/2/12), 92 So.3d 1018, 1021, writ denied, 12-1179 (La.9/14/12), 99 So.3d 34.
In support of the motion for summary judgment, Farm Bureau contends that Sections 22:1973 and 22:1892 do not apply to the payment of a final judgment, arguing that the statutory provisions only require timely payment of a “claim” or “settlement.” Farm Bureau relies upon Easterling v. Monroe City School Board, 27,795 (La.App. 2 Cir. 1/24/96), 666 So.2d 1279, 1281-82, wherein the Second Circuit Court of Appeal held that a judgment was not a claim within the context of | ^Section 22:1973. Edwards counters that a judgment is a type of claim and, for support, quotes a definition from Black’s Law Dictionary providing that a “claim” is a “right to payment, whether or not such right is reduced to judgment.”
The resolution of this dispute turns on the meaning of “claim” in Section 22:1973 and 22:1892. Our interpretation of this statutory term is guided by well established rules of statutory construction. See Katie Realty, Ltd. v. Louisiana Citizens Property Insurance Corporation, 12-0588 (La.10/16/12), 100 So.3d 324, 328. Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for legislative intent. In re Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128. The starting point for interpretation of any statute is the language of the statute itself, as the text of the law is the best evidence of legislative intent. See La. R.S. 24:177B(1); Rando v. Anco Insulations, Inc., 08-1163 (La.5/22/09), 16 So.3d 1065, 1075. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ. Code art. 9; La. R.S. 1:4; In re Clegg, 10-0323 (La.7/6/10), 41 So.3d 1141, 1154 (per curiam).
Statutes that are penal in nature must be strictly construed. Katie Realty, Ltd., 100 So.3d at 328; Reed v. State Farm Mutual Automobile Insurance Company, 03-0107 (La.10/21/03), 857 So.2d 1012, 1020. Accordingly, we are bound to a strict interpretation of the plain language of the penalty provisions to which we now turn. See Katie Realty, Ltd., 100 So.3d at 328.
Section 22:1892 requires insurers to pay “the amount of any claim due any insured” and imposes penalties if the insurer arbitrarily, capriciously, or without *995 probable cause fails to make such payment “within thirty days ... after receipt of ^satisfactory proofs of loss of that claim.” See La. R.S.,22:1-892A(1) and B(l). Similarly, Section 22:1973 imposes an obligation of good faith and fair dealing on an insurer, including the affirmative duty to “adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both.” La. R.S. 22:1973A. Penalties may be imposed if an insurer arbitrarily, capriciously, or without probable cause fails to pay “the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proóf of loss.” La. R.S. 22:1973B(5) and C.
The word “claim” is not defined in either Section 22:1892 or Section 22:1973; however, in Katie Realty, Ltd., the supreme court interpreted this provision in the course of determining whether a written settlement agreement constituted sufficient proof of loss to trigger penalties under Subsection 22:1892B(1). See Katie Realty, Ltd., 100 So.3d at 325-26. After noting that words and phrases should be read with them context and construed according to- their common usage, the supreme court interpreted “claim” to mean an “insurance claim,” that is a claim arising under a contract of insurance. See Katie Realty, Ltd., 100 So.3d at 330-31. The court summarized its interpretation of both “claim” and “proof of loss” as follows:
Reading this phrase in context, it is clear “proof of loss” means proof of “the amount of any claim due any insured” arising under its contract of insurance issued by an insurer. The operative word then is “claim,” and the term in this context logically refers to an insurance claim, either property or casualty. It follows, therefore, proof of loss necessarily means proof sufficient to establish the amount due on an insurance claim.
Katie Realty, Ltd., 100 So.3d at 330-31.
| -Rased upon that interpretation, the supreme court found that a settlement was neither a “claim” nor sufficient “proof of loss” to trigger the relevant penalty provision, stating:
A settlement, however, is not an, insurance claim arising under a contract of insurance. Rather, it is a compromise that resolves the dispute over the insurance claim. See La. Civ.Code art. 3071 (“A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty • concerning an obligation or other legal relationship.”). A written settlement agreement, therefore, constitutes proof of the amount due on the settlement of the claim, not the amount due on the, insurance claim itself.* As such, it. is -not sufficient, to establish proof of a claim within the meaning of La.Rev.Stat. § 22:1892(A)(1).
Katie Realty, Ltd., 100 So.3d at 331.
The supreme court recognized that after the insurance claim was compromised, the plaintiff was enforcing the settlement agreement and not the contract of insurance. The enforcement of the settlement, therefore, was not an insurance claim. Katie Realty, Ltd., 100 So.3d at 331. The issue in the present case — whether a “claim” includes a judgment — is likewise resolved by considering the source of the right asserted by Edwards.
In the UM suit, Edwards asserted a right to recover UM -benefits from Farm Bureau. The source of that right was the contract of insurance, and the demand for benefits constituted a “claim” that was subject to Subsections 22:1892B(1) and 22:1973B(5). However,, as the claim progressed through litigation, it was ultimately reduced to a final-, definitive judgment *996 that determined the rights and obligations of the parties. . See La. Code Civ. Pro. arts. 1841 and, 2166E. The rendering of the judgment is significant with respect to the source of the rights and obligations of the parties after that point., . ,
Once a judgment was rendered, Farm Bureau’s obligations under" the UM policy were merged with the judgment and no longer existed as distinct obligations. See Cassiere v. Cuban Coffee Mills, 225 La. 1003, 1012, 74 So.2d 193, 196 (1954); Glazer Steel Corporation v Larose Shipyard, Inc., 372 So.2d 250, 251 (La.App. 1 Cir.1979). Similarly, with respect to Edwards’ rights,- all causes of action existing at the time of the judgment arising out of the transaction or occurrence that was the subject matter 'of the litigation were extinguished and merged in the judgment. See La. R.S. 13:4231(1). As to those causes of action, any subsequent action by Edwards must be based on the judgment itself. See La. R.S. 13:4231, COMMENTS — 1990 (£). Thus, for the adjudicated claim, -the final judgment became the new source of the respective rights and obligations of the parties. See La. R.S. 13:4231(1); Cassiere, 225 La. at 1012, 74 So.2d at 196; Glazer Steel Corporation, 372 So.2d at 251. After Edwards obtained the judgment, his right to compensation was no longer dependent upon any term or condition in the insurance policy. Instead, his right was entirely defined and delineated by the terms of the judgment.
When Edwards demanded páyment of the judgment, he was. not enforcing the ■contract of insurance; he was enforcing the judgment; -■ The enforcement of the judgment, like the enforcement of the settlement. in Katie Realty, Ltd., “is not an insurance claim arising under a contract of insurance.” See Katie Realty, Ltd., 100 So.3d at 331. Therefore, according to the dictates of Katie Realty, Ltd., the judgment .does not constitute'a “claim” under Subsections 22:1892B(1) and 22:1973B(5).
This conclusion is supported 'by other provisions of the insurance ■ code that reflect legislative intent concerning the scope of the word “claim.” • Laws on the same subject matter must be interpreted in reference to each other. La. Civ. Code art. 13; Oubre v. Louisiana Citizens Fair Plan, 11-0097 (La.12/16/11), 79 So.3d 987, 997. The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the. same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting it. Allen v. Allen, 13-2778 (La.5/7/14), 145 So.3d 341, 346.
The legislature provided a definition of “claim” in Louisiana Revised Statute 22:1188.1, which was enacted in 2012 and governs the duty of an insurer to promptly pay a claim for benefits under a long-term care insurance policy. See 2012 La. Acts. No. 91, § 1. Under this statute, a “claim” is defined, in relevant part, as “a request for payment of benefits under an in-force policy.”. La. R.S. 22:1188.1A(1). Consistent with Katie Realty, Ltd,, this definition connects a claim to the payment of benefits “under an in-force policy.” Additionally, and perhaps even more, informative for present purposes, the legislature described a claim as “a request for payment,” which suggests a process whereby the insurer is asked to review and approve a payment of benefits. A request of that ñatúre is not consistent with the enforcement of á judgment, which allows the insured to unilaterally compel payment of thé indebtedness through execution proceedings. See La. Code Civ. Pro; arts. 2291-2456. This statutory definition of “claim” does not reflect legislative intent that the term should be construed to include a judgment.
*997 We further note that both Section 22:1892 and Section 22:1973 distinguish a settlement from a claim by setting forth certain- duties specifically applicable to the payment of a settlement. See La. R.S. 22:1892A(2); La. R.S. 22:1973B(2). Neither statute contains similar provisions expressly applicable to the payment of a judgment. In contrast, the penalty statute applicable ' to workers’ compensation | minsurers specifically addresses judgments and imposes penalties if a “final, nonappealable judgment” is not paid within the specified delay. See La. R.S. 23:1201G. If the legislature intended for Subsections 22:1892B(1)' and 22:1973B(5) to likewise apply to the failure to pay a judgment, it could have easily and clearly stated so in the statutes, as it did in Louisiana Revised Statute 23:1201G. Cf., Durio v. Horace Mann Insurance Company, 11-0084 (La.10/25/11), 74 So.3d 1159, 1170.
Finally, we find that extending Subsections 22:1892B(1) and 22:1973B(5) to the payment of a judgment would not serve the purpose of these provisions. A statute must be applied, and interpreted in a manner that is logical and consistent with the presumed fair purpose and intent of the legislature in enacting it. Harrah’s Bossier City Investment Company, LLC v. Bridges, 09-1916 (La.5/11/10), 41 So.3d 438, 447. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. Civ. Code art. 10.
The purpose of Subsections 22:1892B(1) and 22:1973B(5) is to provide a mechanism for enforcing existing contractual obligations between the insurer and, the insured, and deterring bad faith on the part of insurers in opposing valid claims. See Demma v. Automobile Club Inter-Insurance Exchange, 08-2810, (La.6/26/09), 15 So.3d 95, 104. The risk of being assessed with penalties and attorney fees creates an incentive -for the insurer to fairly and promptly adjust the claim of an insured. That incentive, is needed during the claim process when it otherwise would be most lacking: before the claim is reduced to a judgment. Prior to that time, the insured has no available means to force an insurer to promptly pay a valid claim. Absent the penalty provisions, a recalcitrant insurer could continually delay Inpayment of the claim without the threat of additional liability. At a time when the insured has limited means to compel action from an insurer, Subsections 22:1892B(1) and 22:1973B(5) incentivize the insurer to adjust claims fairly and promptly.
Those dynamics change significantly, however, once the claim is reduced- to a judgment in favor of the insured. As previously recognized, the insured can then compel payment from the insured by executing on the judgment. See La. Code Civ. Pro. arts. ,2291-2456. With an enforceable judgment, the insured no longer needs the mechanism provided by Subsections 22:1892B(1) and 22:1973B(5) to enforce his contractual rights and'deter bad faith. The judgment provides that mechanism, not only through the execution procedures available to the insured, but also by the addition of legal interest, which continues to accrue until the judgment is paid. See La. R.S. 13:4203; Ridenour v. Wausau Insurance Company, 627 So.2d 141, 142 (La.1993). While bringing the payment of a judgment within the purview of these penalty statutes would clearly provide additional incentive to promptly pay the judgment, that is an additional remedy that cannot be created judicially, but must be addressed to the legislature.
. For all of the foregoing reasons, and applying1 a strict construction of the statutory provisions, we do not interpret' the word , “claim” in Sections. 22:1892 and 22:1973 to encompass a judgment. There *998 fore, Subsections 22:1892B(1) ■ and 11g22:1973B(5) do not apply to-the failure to pay a judgment, and summary judgment was properly rendered in favor of Farm Bureau.[1]
CONCLUSION
We affirm the summary judgment rendered by the trial court on October 22, 2014. All costs of the appeal are assessed to Byard Edwards, Jr, . : •
AFFIRMED.

. We note that this court previously affirmed an award of penalties under Subsection 22:1973B(5) based upon the failure to pay a stipulated judgment within the delay agreed upon by the parties. See Defazio v. City of Baton Rouge, 625 So.2d 733, 735 (La.App. 1 Cir.1993), writ denied, 631 So.2d 1164 (La.1994). However, Defazio is distinguishable as it involved enforcement of an oral stipulation, not a written, final judgment rendered after a contested trial. In this context, the stipulated judgment is analogous to a settlement. See Defazio, 625 So.2d at 733. The Defazio holding that Subsection 22:1973 B(5) is applicable to the failure to pay a stipulated judgment is now of questionable authority following the holding in Katie Realty, Ltd. that a settlement agreement does riot invoke the similar provision at Subsection 22:1892B(1). See Katie Realty, Ltd., 100 So.3d at 331.