CRAIN, J.
lain this suit seeking penalties, attorney fees, and damages sustained as a result of the alleged bad faith of the insurer, the plaintiff alleges that the defendant insurer failed to pay a claim within thirty days after receipt of satisfactory proof of loss. The trial court dismissed the suit by summary judgment, finding no violation of the applicable statute because the payment was mailed within the statutory delay, and further finding that the conduct of the defendant was not arbitrary or capricious. We affirm.
FACTS
On or about October 6, 2010, Beau Schexnaildre was involved in a motor vehicle accident caused by the negligence of Nathan Spicer. Spicer was insured by a policy of automobile liability insurance with a limit of $25,000.00 per claim, and Schexnaildre ultimately resolved his claim against Spicer, Spicer’s wife, and his insurer, Spicer Constructipn, the owner of the vehicle being operated by Spicer and Spi-cer’s insurer, for an amount in excess of that policy limit.
Schexnaildre also sought recovery under a policy of uninsured/underinsured motorist coverage (“UM”) issued to him by State Farm Mutual Automobile Insurance Company. After initially providing State Farm *110 with a copy of the motor vehicle accident report, Schexnaildre later forwarded copies of his medical records, medical bills in the total amount of $23,197.78, and policy information confirming the limits of Spi-cer’s liability' insurance (the “UM áe~. mand”). The UM demand was received by State Farm on March 14, 2012. Thirty-three days later on April 16, 2012, a Monday, counsel for Schexnaildre received a check in the mail from State Farm for the UM policy limit of $25,000.00.
Schexnaildre filed the present suit against State Farm alleging that the insurer failed to make an unconditional tender of benefits under 'the UM policy | -¡within thirty days of receipt of satisfactory prdof of loss, and that the failure to -make the tender was arbitrary, capricious, and without probable cause. Schexnaildre sought penalties, attorney fees, damages resulting from the alleged bad faith, and all' of costs of the proceeding. ‘ '
After answering, State Farm filed a motion for summary judgment asserting that it was entitled to a judgment dismissing the suit with prejudice. State Farm argued, in part,. that Schexnaildre did not provide sufficient proof of loss under Louisiana Revised Statute 22:1892 (formerly Louisiana Revised Statute 22:658), because the UM demand did not establish that Spicer was underinsured and only included medical bills for slightly more than one-half of the claimed expenses. State Farm alternatively asserted that the eláim was timely paid under Section 22:1892 because the payment was placed iri the mail to counsel for Schexnaildre within thirty days of the insurer’s receipt of the UM demand.
In opposition to the motion, Schexnail-dre argued that the UM demand provided adequate proof of loss, as evidenced by the fact that State Farm paid its policy limit without requiring or obtaining any additional information. As to the timeliness of the payment, Schexnaildre maintained that Section 22:1892 requires that the payment must be received by the insured within thirty days, which did not occur in this case.
At the hearing on the motion, the trial court found that the UM demand provided satisfactory proof of the loss but, agreeing with State Farm, found that mailing the payment within thirty days is sufficient to comply Section 22:1892. However, the trial court expressed doubt as to whether the undisputed evidence established the date the check was placed in the mail by State Farm, as the exhibits only established that the check was “completed” and “placed” for the mail, rather 14than actually mailed, on Friday morning, April 13, 2012, the last day of the thirty-day period.
Counsel for Schexnaildre. acknowledged that he received the check in Natchitoches on Monday, April 16, 2012; however, the trial court believed the evidence did not definitively establish whether the check was mailed the previous Friday, the last day of the delay, or on Saturday, April 14, 2012, the fhirty-first day after receipt of the UM demand. Although the trial recognized that it was somewhat “farfetched” to suggest that the check could have been mailed from Baton Rouge as late as Saturday, and yet still arrive in Natchitoches the following Monday, the trial court found that the lack of evidence of a definite mailing date created a genuine issue of material fact. For that reason, the trial court denied the summary judgment but noted that State Farm was not precluded from re-urging the motion with additional evidence establishing when the check was actually mailed.
State Farm later re-urged the motion for summary judgment and supplemented the motion with three affidavits addressing the mailing of the check. Dawn Cochran, a claims service assistant in the Baton *111 Rouge claim’s office of State Farm, attested that her activity logs confirm that on Friday morning, April 13, 2012, at 7:49 a.m., she took the $25,000.00 UM tender check and a transmittal letter, both dated April 12, 2012, and placed them in an envelope “for pickup and mail processing.” Monica Sanger, also employed by State Farm as a claims service assistant in the Baton Rouge office, attested that in April of 2012, all outgoing pieces of mail would be picked up and gathered from designated mail baskets once in the morning and once in the afternoon. After postage was applied, the mail would be placed in a U.S. Mail plastic bin and would be picked up by DMS Mail Management Services, Inc. between 3:30 p.m. and 4:30 p.m., Monday | ^through Friday, except holidays, and' delivered to the post office. .'The mail gathering process and pickup was not performed on Saturdays or Sundays.
Gary Simmons, the general manager for DMS Mail Management, attested that all mail picked up at the State Farm' office was processed, delivered, and' deposited with the U.S. Post Office for mailing on the same day it was picked up. DMS Mail Management did not make deliveries to the U.S. Post Office on Saturdays or Sundays; therefore, if for any reason the processing and delivery of State Farm’s mail could not have been completed on Friday, April 12, 2012, the mail would have been processed the following Monday.
In an opposition -memorandum, Sehéx-naildre objected to the admissibility of the affidavits of Sanger and Simmons, arguing that the affidavits did not sufficiently identify or explain the respective affiant’s basis of knowledge for the facts set forth in the affidavits. In that regard, Sanger confirmed in her affidavit that her current duties at State Farm include “responsibility for gathering outgoing mail ... processing those pieces of mail, and preparing them for pickup by. DMS Management,” and that she is familiar with the mail procedures;used by the State Farm claims office in Baton Rouge in April of 2012. Schexnaildre argued that Sanger’s affidavit does not identify whether she was- employed by State Farm in April of 2012, and, if she was not, her statements would not be based on her personal knowledge. As to the affidavit of Simmons, the general manager of DMS Mail Management, Schexnaildre argued that the .affidavit does not state whether Simmons was employed by DMS Mail Management in April of 2012 or how he was familiar with the-, procedures used by the company.at that time.
At the hearing on the re-urged motion for summary judgment, the trial court did not expressly rule on Schexnaildre’s objections to the affidavits of Sanger and Simmons, but the court stated that it found no genuine issues' of material fact' and | (¡granted summary judgment in favor of State Farm. According to the trial court’s oral reasons, the check was mailed within thirty days of the demand, and there was no showing that the conduct of State Farm was arbitrary or capricious. A judgment was signed thereafter that dismissed the claims of Schexnaildre, with prejudice.
On appeal, Schexnaildre assigns as error the following findings by the trial court: (1) Section 22:1892 requires that benefits only be mailed, and not received, within thirty days of receipt of satisfactory proof of loss; .and (2) there are no material issues of fact as to whether State Farm mailed-the benefits within thirty days of receipt of the satisfactory proof of loss.
DISCUSSION
A motion for summary judgment shall be granted only if the pleadings, depositions, answers to .interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion *112 for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Giv. Pro. art. 966 B(2). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. See La.Code Civ. Pro. art. 966 A(2). In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. In re Succession of Beard, 13-1717 (La.App. 1 Cir. 6/6/14), 147 So.3d 753, 759-60. The interpretation of a statute is a question of law that may be decided by summary judgment. Louisiana Workers’ Compensation Corporation v. Landry, 11-1973 (La.App. 1 Cir. 5/2/12), 92 So.3d 1018, 1021, writ denied, 12-1179 (La.9/14/12), 99 So.3d 34.
|7In his first assignment of error, Schexnaildre contends that Section 22:1892 requires that payment of the claim must be received by the insured within thirty days. The merit of this assignment turns on our interpretation of the statute, and our analysis is guided by well-established rules of statutory construction. Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for legislative intent. In re Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128. The starting point for interpretation of any statute is the language of the statute itself, as the text of the law is the best evidence of legislative intent. See La. R.S. 24:177 B(1); Rando v. Anco Insulations, Inc., 08-1163 (La.5/22/09), 16 So.3d 1065, 1075. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9; La. R.S. 1:4; In re Clegg, 10-0323 (La.7/6/10), 41 So.3d 1141, 1154 (per curiam).
Section 22:1892 is penal in nature and, therefore, must be strictly construed. See Louisiana Bag Company, Inc. v. Audubon Indemnity Company, 08-0453 (La.12/2/08), 999 So.2d 1104, 1120; Reed v. State Farm Mutual Automobile Insurance Company, 03-0107 (La.10/21/03), 857 So.2d 1012, 1020. Under a strict construction, every doubt must be resolved against the imposition of the penalty. See Bowens v. General Motors Corp., 608 So.2d 999, 1005 (La.1992). Accordingly, we are bound to a strict interpretation of the plain language of the penalty provisions to which we now turn. See Katie Realty, Ltd. v. Louisiana Citizens Property Insurance Corporation, 12-0588 (La.10/16/12), 100 So.3d 324, 328.
Section 22:1892 provides, in relevant part:
|sAll insurers issuing any type of contract ... shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
* * ⅜
Failure to make such payment within⅜ thirty days after receipt of such satisfactory written proofs and demand therefor ..., when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty
La. R.S, 22:1892 A(l) and B(l)..
These provisions mandate that the insurer “shall pay” any claim due to an insured within thirty days after receipt of satisfactory proof of loss, and the “[f]ailure to make such payment” subjects the insurer to penalties if the failure was arbitrary, capricious, or without probable cause. The only additional information in the stat *113 ute about the payment is in Subsection 22:1892 C(l), which provides, in relevant part, that all claims “shall be paid by check or draft of the insurer” payable to the order of the claimant, his attorney, or to a person specified by the claimant.
Schexnaildre contends that Section 22:1892 requires that the payment be received by the insured within the thirty-day delay. To construe the statute otherwise, according to, Schexnaildre; would require replacing the word “pay” with the word “mail.” State Farm counters that the statute, when strictly construed, requires only that the insurer “make such payment” within thirty days, not that the insured “receive payment” during that delay. State Farm points out that if the legislature had intended for the receipt of the payment to be controlling, the legislature would have expressly stated that in the statute, as it did when providing that the thirty-day delay commences upon the insurer’s “receipt” of satisfactory .proof of loss. See La. R.S. 22:1892 A(l) and B(l).
Both parties cite jurisprudence in support of their proposed interpretation. Schexnaildre cites Morrison v. Alexandria Commons, LLC, 09-652 (La.App. 3 Cir. 12/9/09), 25 So.3d 989, writ not considered, 10-0082 (La.3/26/10), 29 So.3d 1261, which held an insurer breached its statutory obligation “to pay a settlement within thirty days” after the agreement was reduced to writing, as required by Louisiana Revised Statute 22:1973 B(2). In that case, the payment was received by the claimant thirty-eight days after the settlement was confected. The insurer argued that it was in good faith because it placed the settlement funds in the hands of a delivery service before the expiration of the delay, with the belief that the funds would be delivered over-night and received by the claimant before the expiration of the delay. Morrison, 25 So.3d at 995-97. The Third Circuit Court of Appeal rejected this argument and held that the insurer could not shield itself from liability by asserting that payment was not forthcoming because it picked the wrong means of delivery. Morrison, 25 So.3d at 997.
State Farm cites McMillan v. Travelers Insurance Company, 371 So.2d 1213 (La.App. 1 Cir.1979), wherein this court addressed a claim under former Louisiana Revised Statute 22:657 A, which mandated that claims under health insurance policies “shall be paid” not more than thirty days after written notice and proof of the claim are furnished to the insurer. See noto La. R.S. 22:1821 A. About one week after receiving the claim information, thq insurer in McMillan mailed two checks to the insured at her place of employment. . The insured, who was on leave from her. employment at the time, called the insurer shortly thereafter to advise that she had not received the checks. McMillan, 371 So.2d at 1214. The insurer instructed the insured to inquire with her employer, and to contact the insurer again if she did not receive the checks within a week. A representative of the insured’s employer testified at trial that they received the checks and forwarded them to the insured, but apparently the checks were lost in the mail and were never received by the insured. McMillan, 371 So.2d at 1214.
hnBased on the evidence presented at the trial, the trial court concluded that the payment had been made by the defendant within the time period required by the statute and that the plaintiff failed to prove any error or fault attributable to the defendant. McMillan, 371 So.2d at 1215. On appeal, this court affirmed, holding:
The evidence sustains , [the trial court’s] conclusion. Exhibits J3 and J-6 affirmatively show that the claim was processed and that the checks in payment of the claim were issued by Travel *114 ers on May 16, 1977, one week after being received by the insurer. The testimony ... concerning the procedure used in this and other cases by [the insurer and the plaintiffs employer] stands unrebutted in the record. '
McMillan, 371 So.2d at 1215.
State Farm also relies upon Hackman v. EMC Insurance Company, 07-552 (La.App. 5 Cir. 3/25/08), 984 So.2d 139, which involved allegations that a fire insurer violated Section 22:658 (now Section 22:1892) by failing to timely pay a claim. The insurer claimed that it complied with the statute by mailing'the check before the expiration of the thirty-day delay; and, when'the insured returned the check because of a change in the mortgagee, the insurer immediately issued a replacement check, Hackman, 984 So.2d at 140. The trial court granted summary judgment in favor of the insurer, and the Fifth Circuit Court of Appeal affirmed, explaining:
[W]e find EMC timely tendered payment to; Hackman and, therefore, the trial court correctly granted summary judgment in favor of EMC. The Proof of Loss was received by EMC on June 13, 2003. The check was mailed to Hackman and’ received by him no later than July 15,2003.
[[Image here]]
We agree with the trial court'that even if -the check was not received by Hackman until July 15, 2003, the thirty-first day after receipt of the Proof of Loss by EMC, EMC was not arbitrary and capricious in failing to timely pay. We also note that once Hackman sent the check and a letter back to EMC on August 7, 2003, informing EMC of the change of mortgagee, EMC quickly issued and mailed a new check to Hack-man. The new check was dated August 18, 2003. We find that, according to La. R.S, 22:658, the actions of EMC do not warrant an award of attorney fees or penalties to Hackman.
Hackman, 984 So.2d at 144.
While this jurisprudence offers guidance, we find each of these cases distinguishable based upon the facts. In Morrison, the case cited by Schexnaildre for the premise that mailing of the payment is insufficient, the insurer relied upon a private party to deliver the payment-to the insured, and it was received by the insured over one week after the expiration of the delay. Morrison, 25 So.3d at 991, 993. In McMillan, cited by State Farm, the insurer mailed the payment early in the thirty-day period and, by telephone, asked the insured to respond if the check was not received . shortly thereafter. McMillan, 371 So.2d at 1215. The facts of Hackman are most similar to the present case, but the check in that case, while mailed before the expiration of the delay, nevertheless had to be returned and reissued through no fault of the insurer. Hackman, 984 So.2d at 144.
' In construing Section 22:1892, we are mindful that a statute must be applied and interpreted in a manner that is logical' and consistent with the presumed fair purpose and intent of the legislature in enacting it. Harrah’s Bossier City Investment Company, LLC v. Bridges, 09-1916 (La.5/11/10), 41 So.3d 438, 446-47. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. Civ.Code art. 10.
The purpose: of Subsection 22:1892B(1) is to provide a mechanism for enforcing existing contractual- obligations between the insurer and the insured, and deterring bad faith on the part of insurers in opposing valid claims. See Demma v. Automobile Club Inter-Insurance Ex *115 change, 08-2810 (La.6/26/09), 15 So.3d 95, 104; Edwards v. Louisiana Farm Bureau Mutual Insurance Company, 15-0292, 2015 WL 5522010 (La.App. 1 Cir. 9/18/15), 182 So.3d 992. To that end, the trial court observed that the statute provides an insurer with thirty days to review | t2and pay a claim. The trial court noted that if the timeliness of the payment is determined by its mailing date, the. period for review and payment of a claim is uniform in all cases: thirty days. On the other hand, as recognized by the trial court, if the timeliness of the payment is dictated by the date of its receipt by the insured, the amount of time available for the claim-review process could vary, greatly, depending:upon .the time and distance required to deliver the check to the insured. This lack of uniformity in the claim-review process, according, to the trial court, weighed against the interpretation offered by Schexnaildre.
As previously , recognized, Section 22:1892 is intended, in part, to deter bad faith on the part of insurers in opposing valid claims. See Demma, 15 So.3d at 104; Edwards, 182 So.3d at 997. In that regard, the statute provides a finite amount of time — thirty days — for an insurer to oppose a valid 'claims or as characterized by the trial court, to review and pay the claim. If that delay expires without payment of the claim, penalties will be imposed. Consistent with the trial court’s reasons, this thirty-day period will be uniform in every case if the timeliness of the payment is determined by its mailing date, rather than its delivery date. The insurer will have thirty days, no more or no less, to oppose or pay the claim.
The mailing date is under the control of the responsible insurer and, therefore, provides-a predictable termination point to the claim-review process. Conversely, the delivery date is subject to a number of variables beyond the control of the insurer and is hot as easily ascertainable in. advance. Furthermore, by placing a check in the U.S. mail properly addressed to the insured and bearing-adequate postage, the insurer relinquishes possession and control over the check and is no longer “opposing” that -undisputed portion of the claim. At that point, the risk of any bad faith in opposing the undisputed portion of the claim, which the statute seeks to deter, is nonexistent, and the statute has achieved its purpose.
JjgApplying a strict construction of Section 22:1892 and resolving all doubts against the imposition of the penalty, we find that State Farm’s placement of a check for pick up by DMS Mail Management, which then deposited the check in the U.S. mail the same day with sufficient postage and properly addressed to counsel for the properly named claimant, constitutes “payment” for purposes of Subsections 22:1892 A(l) and B(l). The first assignment of error has no merit.[1]
In his second assignment of error, Schexnaildre asserts that the trial court erred when it found no genuine issues of material fact as to whether State Farm had mailed the payment within thirty days of receipt of satisfactory proof. of lo.ss. The evidence relied upon by State Farm to *116 establish that the check was mailed on Friday, April 13, 2012, the thirtieth day after receipt of the UM demand, includes affidavits from the following individuals:
1. Cochran, the claims service assistant in the Baton Rouge office of State Farm who attested that she placed the check and a transmittal letter in an envelope for pickup and mail processing on Friday, April 13, 2012, at 7:49 a.m.;
2. Sanger, another claims service assistant employed by State Farm in the Baton Rouge office who attested that in April of 2012, all outgoing pieces of mail would be picked up by DMS Mail Management Services between 3:30 p.m. and 4:30 p.m., Monday through Friday, and that DMS Mail Management did not pick up mail on a Saturday;
3. Simmons, the general manager for DMS Mail Management who attested that (1) all mail picked up at the State Farm office in 2012 would | uhave been processed, delivered, and deposited with the U.S. Post Office for mailing on the same day it was picked up; (2) DMS Mail Management did not make deliveries to the U.S. Post Office on Saturdays or Sundays; and (3) if for any reason the processing and delivery of State Farm’s mail could not have been completed on Friday, April 12, 2012, the mail would have been processed the following Monday; and
4. Edwin Dunahoe, counsel for the plaintiff, who attested that he received the check at his post office box in Natch-itoches on Monday, April 16,2012.
Schexnaildre did not counter this evidence with any affirmative proof that the check was mailed on Saturday, rather than Friday; however, he did object to the affidavits of Sanger and Simmons on the grounds that the affidavits did not sufficiently set forth the basis of their knowledge of the information set forth therein. The transcript does not reflect whether the trial court ruled on Schexnaildre’s objections. The trial court stated only that plaintiffs counsel “possibly may be right about the affidavit,” but the court later found no genuine issues of material fact and specifically stated that the payment “was mailed on the 30th day or within 30 days.”
On appeal, Schexnaildre again asserts that the affidavits are not admissible for the same reasons argued to the trial court. In determining whether summary judgment is appropriate, this court reviews evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. See In re Succession of Beard, 147 So.3d at 759-60. Accordingly, we will address the merits of Schexnaildre’s objections to this evidence.
Affidavits offered in support of or in opposition to a motion for summary judgment shall be made on personal knowledge and shall show affirmatively that h fithe affiant is competent to testify to the matters stated therein. See La.Code Civ. Pro. art. 967 A; Mapp Construction, LLC v. Southgate Penthouses, LLC, 09-0850 (La.App. 1 Cir. 10/23/09), 29 So.3d 548, 563-64, writ denied, 09-2743 (La.2/26/10), 28 So.3d 275. Personal knowledge encompasses only those facts that the affiant saw, heard, or perceived with his own senses. Berard v. L-3 Communications Vertex Aerospace, LLC, 09-1202 (La.App. 1 Cir. 2/12/10), 35 So.3d 334, 349, writ denied, 10-0715 (La.6/4/10), 38 So.3d 302. However, a witness is permitted to draw reasonable inferences from his personal observations. Vanderbrook v. Coachmen Industries, Inc., 01-0809 (La.App. 1 Cir. 5/10/02), 818 So.2d 906, 910.
Sanger confirmed in her affidavit that she is employed by State Farm in the *117 Baton Rouge claims office and that her current duties include “responsibility for gathering outgoing mail ... processing those pieces of mail, and preparing them for pickup by DMS Mail Management.” She further attested that she is familiar with the mail procedures used by the State Farm claims office in Baton Rouge in April of 2012. While her affidavit, which was signed in 2014, does not specifically state the nature of her employment responsibilities in 2012, we find that the document sufficiently sets forth the basis of her knowledge of the company’s mail processing procedures. Sanger is the employee who is responsible for gathering and processing the outgoing mail at the State Farm claims office in Baton Rouge. Her personal experiences and observations' in that position provide a sufficient, basis for her statement that DMS Mail Management did hot pick up mail from the Baton Rouge claims office on Saturdays in 2012. The objection to the admissibility of her affidavit is without merit.
Sehexnaildre similarly argues that the affidavit of Simmons does not state whether Simmons was employed by DMS Mail Management in April of 2012 or | lfihow he was familiar with the procedures used by the company at that time. Simmons’ affidavit confirms that he is the general manager of DMS Mail Management. In that capacity, Simmons would be familiar with basic operational information concerning the company, both presently and in the recent past, such as whether the company picked up or delivered mail on Saturdays. Sehexnaildre produced no evidence contradicting that statement by Simmons. Our courts have previously recognized that an affiant’s status as an executive of a company demonstrates some competency to testify about basic information concerning the company, particularly where that information is not contradicted by any other evidence. See Lafayette Electrical & Marine Supply, Inc. v. Abdon Callais Offshore, LLC, 09-2277 (La.App. 1 Cir. 7/29/10), 44 So.3d 890, 892-93 (by identifying the affiant as the president of the company, affidavit demonstrated his competency to testify to information contained therein, and opponent produced no evidence contradicting the statements); Jones v. Foster, 41,619 (La.App. 2 Cir. 12/13/06), 945 So.2d 262, 266 (affiant, as the regional manager of a company, had sufficient personal, knowledge to attest that employees did not work on Saturdays); Chavers v. Bright Truck Leasing, 06-1011 (La.App. 3 Cir. 12/6/06), 945 So.2d 838, 845, writ denied, 07-0304 (La.4/5/07), 954 So.2d 141 -(affiant, in in- his capacity as senior vice-president of-a company, had the requisite knowledge to .attest that company did not take possession of a vehicle). The -objection to the admissibility of Simmons’ affidavit is also without merit.
The undisputed evidence establishes that the payment was mailed by State Farm on Friday, April 13, 2012, the thirtieth day after State Farm’s receipt of the UM demand forwarded on behalf of Schex-naildre. The trial .court did -not err in finding no genuine issue of material fact concerning that date. This assignment of error has no merit.
^CONCLUSION
Based upon our de novo review of the evidence, the trial court did not err in granting summary judgment in favor of State Farm, dismissing with prejudice the claim for- penalties and attorney fees asserted by Sehexnaildre. The summary judgment .signed on October 9, 2014, is affirmed, and all costs of this appeal are assessed to. Beau Sehexnaildre.
AFFIRMED.

. We recognize that payment of a claim is not fully processed until the insured presents a check or draft for payment, the instrument is honored, and the funds are transferred to the insured. In the present case, Schexnaildre has not alleged a refusal or delay in the honoring of the check, and we express to opinion as to the effect of such actions on the determination of the timeliness of a payment imder Subsections 22:1892 A(l) and B(l). See also La. R.S. 22:1892 C(2) (prohibiting an insurer from intentionally or unreasonably delaying the processing of any properly endorsed check or draft issued in settlement of an insurance claim).