PENZATO, J.
Appellant/third-party plaintiff, Texas Brine Company, LLC (Texas Brine), appeals the trial court's judgment granting summary judgment in favor of appellee/third-party defendant, National Surety Corporation (National Surety), and dismissing its claims.[1] For the reasons that follow, we reverse the trial court.
FACTS AND PROCEDURAL HISTORY
The underlying litigation in this matter involves the 25-acre sinkhole in Assumption Parish that resulted when the site of a former brine well, known as the Oxy Geismar Well No. 3 (OG3) collapsed. Texas Brine originally drilled OG3 on land owned by Occidental Chemical Corporation (Oxy) in 1982, in order to produce salt from the *1095 Napoleonville Salt Dome (Salt Dome), which lies beneath Oxy's land. In 1983, Oxy leased a part of its land to Colorado Crude Company (Colorado Crude Lease) for the purpose of drilling an oil well. In 1986, an oil well was drilled and became known as Hooker # 1 Well.[2]
Numerous plaintiffs filed suit against several defendants, including Texas Brine, for damages to their property. In the course of the litigation, Texas Brine filed an Amended Incidental Demand Against Operators and Lessees of the Hooker # 1 Well. Sol Kirschner was named as a third-party defendant as a prior operator and/or lessee of Hooker # 1 Well, along with several other co-lessees and joint operators. Texas Brine asserted that Mr. Kirschner held an interest in commercial drilling operations near the site of the sinkhole. Texas Brine also claimed that the Salt Dome was breached during the drilling and/or operation of Hooker # 1 Well, which shared a common wall with the OG3 cavern. Texas Brine alleged that Mr. Kirschner was a party to the mineral leases under which the Hooker # 1 Well was operated, including the Colorado Crude Lease, and that he is liable with his co-lessees to Texas Brine under the Colorado Crude Lease. Texas Brine later amended its incidental demand to add National Surety as a third-party defendant and alleged that it is entitled to damages and other forms of relief from National Surety pursuant to an insurance policy issued to Mr. Kirschner.[3]
National Surety issued premier insurance policies with homeowner's and excess coverage for Mr. Kirschner's Dallas, Texas home, including the premises and its contents. The policies included both a homeowner's primary policy, with liability limits of $500,000 (Primary policy), and an excess policy, with liability limits of $5,000,000 (Excess policy). National Surety filed a motion for summary judgment seeking a declaration that the applicable policies of insurance excluded coverage for business activities, which would exclude alleged losses associated with Mr. Kirschner's interest in commercial drilling operations near the site of the sinkhole. National Surety maintained that Texas Brine would be unable to carry its burden of proving that the operations at the Hooker # 1 Well were not business activities, and thus were excluded from coverage. National Surety argued that the Hooker # 1 Well did not constitute a covered incidental business such that the narrow exceptions to the business activities exclusion would apply. In opposition, Texas Brine argued that the policies issued by National Surety were expansive and deluxe offerings, which afforded greater protection to its insureds than a typical homeowner's policy. It was further urged by Texas Brine that there were genuine issues of material fact precluding summary judgment.
This matter was heard by the trial court on February 1, 2017, and taken under advisement.[4] On April 20, 2017, the trial court issued its reasons for judgment as well as a judgment, which granted the summary judgment in favor of National Surety, but did not dismiss any party or claims. Texas Brine filed a notice of intent *1096 to apply for supervisory writ, but the trial court denied the request for a return date. Despite the denial of the trial court, Texas Brine filed its writ application with this court on June 2, 2017, which was assigned No. 2017-CW-0756. Texas Brine also filed a petition for devolutive appeal of the April 20, 2017 judgment, which was granted on May 31, 2017. In light of Texas Brine's filing for supervisory writ, National Surety filed a motion to amend the judgment to include appropriate decretal language on June 5, 2017.[5] On June 28, 2017, the trial court issued an amended judgment granting National Surety's motion for summary judgment and dismissing the claims of Texas Brine against National Surety with prejudice. The trial court issued an order for devolutive appeal of the amended judgment on July 14, 2017. This court referred the writ to the panel to which the appeal was assigned. Labarre, et al. v. Occidental Chemical Company and Texas Brine Company, LLC, 2017-0756 (La. App. 1 Cir. 8/22/17) (unpublished writ action).
The April 20, 2017 judgment was not a final judgment as it did not contain any decretal language. A valid judgment must be precise, definite, and certain. Laird v. St. Tammany Parish Safe Harbor, 2002-0045 (La. App. 1 Cir. 12/20/02), 836 So.2d 364, 365. A final appealable judgment must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. See Carter v. Williamson Eye Center, 2001-2016 (La. App. 1 Cir. 11/27/02), 837 So.2d 43, 44. The June 28, 2017 amended judgment cured the defect in the decretal language by dismissing the claims of Texas Brine against National Surety with prejudice. The amended judgment dismissed the suit as to less than all the parties and granted the motion for summary judgment.[6] Therefore, the June 28, 2017 amended judgment is immediately appealable as a partial final judgment pursuant to *1097 La. C.C.P. art. 1915(A)(1) and (A)(3). Accordingly, we maintain the appeal and dismiss the writ application as moot.
SUMMARY JUDGMENT
Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2).[7] In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 750-51.
The burden of proof rests with the mover. If the mover will not bear the burden of proof at trial, the mover is not required to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
"After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). Moreover, as observed by the Supreme Court in Jackson v. City of New Orleans, 2012-2742 (La. 1/28/14), 144 So.3d 876, 882, cert. denied, --- U.S. ----, 135 S.Ct. 197, 190 L.Ed.2d 130 (2014),
A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.
A motion for summary judgment is a proper procedural device for determining "whether an insurance policy, as a matter of law, provides or precludes coverage." Dixon v. Direct General Insurance Company of Louisiana, 2008-0907 (La. App. 1 Cir. 3/27/09), 12 So.3d 357, 360.
LAW AND DISCUSSION
The Insurance Policy
National Surety issued policy NZT 02566668 to Mr. Kirschner, providing both primary and excess coverage, subject to certain terms, conditions, and exclusions. The Primary policy provided homeowner's coverage for the premises and the contents of Mr. Kirschner's home, as well as personal liability. However, the personal liability section of the Primary policy excluded coverage for business activities. "Business" is defined by the policy as "an occupation, employment, trade, profession, or other activity performed in exchange for money or other compensation, including farming or ranching operations and property rental." The Primary policy contains an exception to the exclusion of business activities for an "incidental business." An "incidental business" is defined as:
*1098 [S]elf-employment or other employment of any insured that:
a. produces a gross annual income of less than $10,000 in cash or value;
b. is not farming or ranching; and
c. does not involve the employment of others.
The Excess policy is a "follow form" policy, which only covers damages to the extent they are covered by the Primary policy. The Excess policy also excludes coverage for losses attributable to an insured's business activities. Unlike the Primary policy, the Excess policy contains no exception to the business activities exclusion for an incidental business.
Trial Court Reasoning and Burden of Proof
The trial court issued written reasons for granting National Surety's motion for summary judgment as follows:
The Court finds that the National Surety Policies exclude liability coverage for business activities. The Court also finds that the narrow exception to the exclusion of the National Surety Primary Policy that reinstates coverage for "incidental businesses" does not apply. The evidence on the National Surety Summary Judgment Motion conclusively and without contradiction shows that the Hooker # 1 Well involved dozens of employees and infers that the Hooker # 1 Well produced gross annual income of more than $9,999.99. This was a commercial enterprise, involving numerous employees. This is far from the type of incidental business that might be [expected] from the "business activities" exclusion.
Texas Brine has not produced sufficient summary judgment evidence to show genuine issues of material facts as to whether or not the business exclusion applies to exclude coverage for alleged losses associated with Mr. Kirschner's involvement in these commercial drilling operations.
We also note that the trial court specifically stated, "Texas Brine cannot meet its burden in proving that the operations at Hooker # 1 Well were not business activities." We disagree.
Texas Brine first argues that trial court incorrectly placed the burden of proof on Texas Brine, rather than on National Surety. An insurer bears the burden of proof on a motion for summary judgment that an exclusion applies. If an exception is met, the exclusion does not apply. The insurer retains the burden of proving that the exception is not met in order to show that the exclusion does apply. Veuleman v. Mustang Homes, LLC , 2013-190 (La. 4/5/13), 110 So.3d 572, 573 ; see Feierabend v. Starns, 2006-1386 (La. App. 1 Cir. 5/4/07), 961 So.2d 1196, 1198. National Surety argues that the 2016 amendments to La. C.C.P. art. 966(D) implicitly superseded Veuleman. Louisiana Code of Civil Procedure article 966(D)(1) places the burden of proof on the mover. Even if the mover would not bear the burden of proof at trial, he must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Even after the 2016 amendment to Louisiana Code of Civil Procedure article 966, the courts have placed the burden on the insurer to prove not only that an exclusion to the policy applies, but also that an exception to the exclusion is not present. Roadrunner Transportation Sys. v. Brown , 2017-0040 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270-71, citing Veuleman , 110 So.3d at 573.
National Surety argues that the burden of proving the exception to the exclusion should be on Texas Brine, citing two cases in support of this proposition.
*1099 Tornabene v. Atlas Life Ins. Co., 295 So.2d 10, 12 (La. App. 4 Cir.), writ refused , 299 So.2d 360 (La. 1974), involved the applicability of the intentional act exclusion when the insured died from bullet wounds. The insurer contended that the intentional act exclusion precluded coverage. The trial court held that intentional act exclusion did not apply since the defendant insurer did not meet its burden of proof. The insurer was deemed to have the burden of proving that the killing was intentional and that the actual victim was the intended. The defendant insurer had shown neither of these factors so the finding of coverage was affirmed. Therefore, Tornabene is consistent with the current law that the insurer has the burden of proving an exclusion applies and does not place the burden on either the insured or a non-moving party. Gremillion v. Goleman, 316 So.2d 810, 818 (La. App. 1 Cir. 1975), involved whether there was proof of permission to bring a non-owner user of an insured automobile within the liability insurance coverage and placed the burden of proving permission on the party seeking coverage. This is in line with the jurisprudence holding that the party seeking coverage bears the burden of proving the policy provides coverage. See Miller v. Superior Shipyard and Fabrication , 2001-2683 (La. App. 1 Cir. 11/8/02), 836 So.2d 200, 203 (stating that an insurer seeking to avoid coverage must prove that some exclusion applies to preclude coverage; however, in determining whether a policy affords coverage for an incident, the insured bears the burden of proving that the incident falls within the policy's terms). It appears that the jurisprudence has carved out an exception to this rule in the case of an exception to an exclusion: the insurer bears the burden of proving not only that the provision excluding coverage applies, but that there also are no other exceptions to the applicability of the exclusion which would render the exclusion inapplicable. Roadrunner Transportation Sys., supra.
The trial court clearly placed the burden on Texas Brine, rather than National Surety with regard to the exclusion and the exception to the exclusion. National Surety is the mover and will bear the burden of proof at trial on the issues of whether an exclusion applies and that an exception to the exclusion is not present. An insurer seeking to avoid coverage through summary judgment bears the burden of proving an exclusion applies to preclude coverage. Green v. Johnson, 2016-1525 (La. App. 1 Cir. 1/10/18), 241 So.3d 1188, 1191-92, 2018 WL 367649, *2. Therefore, we must determine if National Surety carried its burden of proof. If the exception applies, the exclusion does not apply and there would be coverage.
Interpretation of Insurance Policies
Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment. Miller, 836 So.2d at 203. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Bernard v. Ellis, 2011-2377 (La. 7/2/12), 111 So.3d 995, 1002. The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the parties as reflected by the words in the policy. La. C.C. art. 2045 ; Peterson v. Schimek, 98-1712 (La. 3/2/99), 729 So.2d 1024, 1028. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and the agreement must be enforced as written. La. C.C. art. 2046 ; Fouquet v. Daiquiris & Creams of Mandeville, L.L.C., 2010-0233 (La. App. 1 Cir. 9/13/10), 49 So.3d 44, 47.
*1100 Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy. La. R.S. 22:881. Each provision in the policy must be interpreted in light of the other provisions so that each is given meaning; one provision of the insurance contract should not be construed separately at the expense of disregarding other provisions. La. C.C. art. 2050 ; Peterson, 729 So.2d at 1029. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. Peterson, 729 So.2d at 1029. That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. Peterson, 729 So.2d at 1029.
Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Bernard, 111 So.3d at 1002. If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Bernard, 111 So.3d at 1002.
Business Activities Exclusion
Texas Brine assigned as error that the trial court erred in placing the burden on it to prove that the business activities exclusion applied. Texas Brine also assigned as error that the trial court erred in finding that no genuine issues of material fact exist as to whether the business activities exclusions of the National Surety policies excluded coverage for the alleged losses associated with Mr. Kirschner's involvement in commercial drilling operations. National Surety apparently takes the position that this argument is abandoned since Texas Brine does not offer any argument or cite any law in support of its contention as to the applicability of the business activities exclusion. See Uniform Rules, Courts of Appeal, Rule 2-12.4 ; see also Shilling ex rel. Shilling v. State ex rel. Dept. of Transp. and Development, 2005-0172 (La. App. 1 Cir. 12/22/05), 928 So.2d 95, 99 n. 1, writ denied, 2006-0151 (La. 4/24/06), 926 So.2d 541. We do note that other than mentioning that the trial court placed the burden on Texas Brine, rather than National Surety, Texas Brine does not contest the applicability of the exclusion. However, as we stated above, the burden is on National Surety to prove the applicability of an exclusion, and Texas Brine assigned this as an error, even though its argument is very brief. Therefore, we must determine if National Surety carried its burden as to the applicability of the exclusion.
National Surety did submit its insurance policies into evidence. Both the Primary policy and the Excess policy provide exclusions for business activities. "Business" is defined in both policies as an "occupation, employment, trade, profession, or other activity performed in exchange for money or other compensation, including farming or ranching operations and property rental." Numerous attachments to the pleadings offered in this matter exhibit that Mr. Kirschner's activities with regard to the Colorado Crude Lease and the drilling operations was for the "exchange [of] money or other compensation."
Interpreting the language of the insurance policy according to the rules set *1101 forth above, we agree with the trial court that the business activities exclusion applies in this matter. Since the Primary policy contains an exception to the business activities exclusion, and the Excess policy is a "follow form" policy, we must determine whether National Surety met its burden on summary judgment of establishing that the exception to the business exclusion is not applicable as a matter of law.
Incidental Business Exception
The remaining assignments of error involve the applicability of the incidental business exception to the business activities exclusion. Texas Brine argues that National Surety's policies provide specific coverage for certain business activities of Mr. Kirschner that met the definition of "incidental business." Texas Brine asserts that the claims being made fall within the policy definition of "incidental business," because: (1) there was no evidence that Mr. Kirschner received a gross annual income of more than $10,000 in cash or value; (2) the activity was not farming or ranching; and (3) Mr. Kirschner did not have any direct employees in this business.
The Primary policy requires four elements for an activity to meet the definition of an "incidental business." There must be (1) self-employment or other employment of any insured; (2) that produces a gross annual income of less than $10,000 in cash or value; (3) is not farming or ranching; and (4) does not involve the employment of others.
On January 6, 2017, National Surety filed its motion for summary judgment attaching an affidavit of Thear J. Lemoine, the attorney in this matter for National Surety, with attached documents, and an affidavit of Erika Aljens, Vice President, Casualty, for Chubb North American Claims, authorized claims handler for National Surety, attaching the policies at issue in this matter. The documents attached to the Lemoine affidavit include several pleadings: (1) Texas Brine's Amended Answer and Amended Incidental Demands dated September 1, 2015, containing attachments; (2) Texas Brine's Motion to Substitute National Surety as Liability Insurer of Sol Kirschner; and (3) Texas Brine's Amended Incidental Demand Against the Operators and Lessees of the Hooker # 1 Well, containing attachments. The Lemoine affidavit also included deposition excerpts of Robert Konecny, a landman and Land Manager for Browning Oil Company, Inc. (Browning Oil) between 1990 and 1997, and deposition excerpts of Willie Jean Draves Caldwell.[8] On the same date that the motion for summary judgment was filed, National Surety filed a supplemental affidavit of Mr. Lemoine attaching excerpts from both Browning Oil and Colorado Crude Company (Colorado Crude), operators of Hooker # 1 Well, to National Surety's responses to interrogatories and requests for production of documents.
All of the above documents were attached to either the affidavit of Ms. Aljens or the first and second affidavits of Mr. Lemoine, the attorney of record for National Surety. Initially, we point out that La. C.C.P. art. 967(A) provides in pertinent part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated *1102 therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.
Affidavits offered in support of or in opposition to a motion for summary judgment shall be made on personal knowledge and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Schexnaildre v. State Farm Mut. Auto. Ins. Co., 2015-0272 (La. App. 1 Cir. 11/9/15), 184 So.3d 108, 116, citing La. C.C.P. art. 967(A) ; Mapp Construction, LLC v. Southgate Penthouses, LLC, 2009-0850 (La. App. 1 Cir. 10/23/09), 29 So.3d 548, 563-64, writ denied, 2009-2743 (La. 2/26/10), 28 So.3d 275. Personal knowledge encompasses only those facts that the affiant saw, heard, or perceived with his own senses. Berard v. L-3 Communications Vertex Aerospace, LLC, 2009-1202 (La. App. 1 Cir. 2/12/10), 35 So.3d 334, 349, writ denied, 2010-0715 (La. 6/4/10), 38 So.3d 302.
All of the documents attached to the first and second affidavits of Mr. Lemoine fell into the category of those documents acceptable to be attached to a motion for summary judgment, without the necessity of an affidavit. La. C.C.P. art. 966(A)(4). Therefore, even though the first and second affidavits of Mr. Lemoine are insufficient summary judgment evidence, there is no requirement for any of the referenced documents to be attached to an affidavit, all of which were sufficient summary judgment evidence.
Also on January 6, 2017, National Surety filed an affidavit and purported expert opinion report of Michael P. Sapourn, an independent licensed Florida Insurance Agent and/or Adjuster, offering his opinion that the policies issued by National Surety to Mr. Kirschner do not cover liability for energy drilling operations that he opined is a business activity, and that energy drilling does not constitute an incidental business. The record reveals that there was no objection as to Mr. Sapourn testifying as an expert. Louisiana Code of Civil Procedure article 966(D)(2) states that the court shall consider any document to which no objection is made. In this case, the trial court stated in its reasons for judgment that Mr. Sapourn's affidavit and opinion report were admissible and considered. There are only two issues to be decided in this matter: whether the business activities exclusion applies, and whether the incidental business exception to the exclusion applies. We have closely examined the affidavit of Mr. Sapourn and find that his testimony consisted of legal opinions and conclusions of law. We also note that ultimate or conclusory facts or conclusions of law are not to be utilized on a summary judgment motion. Thompson v. South Central Bell Tel. Co. , 411 So.2d 26, 28 (La. 1982). Interpretation of an insurance contract is a matter of law. Maldonado v. Kiewit Louisiana Co., 2013-0756 (La. App. 1 Cir. 3/24/14), 146 So.3d 210, 218. It is in the trial court's province to interpret an insurance contract and exclude an expert witness's opinion as to how the policy should be interpreted. See Benton Specialties, Inc. v. Cajun Well Serv., Inc., 2009-506 (La. App. 3 Cir. 2/10/10), 31 So.3d 1155, 1162, writ denied, 2010-0951 (La. 6/25/10), 38 So.3d 343. Therefore, this court declines to defer its province in the interpretation of this policy of insurance to the opinions of an expert as to the ultimate legal conclusions in this case.
*1103 Our review reveals that none of the documents attached to the first and second affidavits of Mr. Lemoine filed with the motion for summary judgment established the absence of a genuine issue of material fact regarding the application of the incidental business exception, which required proof of the following: (1) self-employment or employment; (2) production of a gross annual income of less than $10,000 in cash or value; and (3) that the business not involve the employment of others. The only parameters addressed in the original documents are that the activity involved was not farming or ranching and that Mr. Kirschner was not employed by the Hooker # 1 Well.
The summary judgment evidence that was sufficiently before the trial court included responses to written discovery of both Browning Oil and Colorado Crude, operators of Hooker # 1 Well, that their "relationship" with Mr. Kirschner was defined by the Model Form Operating Agreement dated December 16, 1985 (Lease Agreement). This Lease Agreement was between McCuistion Minerals Corp., Sol Kirschner, and Frank Yantis, and Adams Resources Exploration Corp., HECI Exploration Company, Retrust Oil & Gas Corp., and Robert Henderson, concerning the sale and purchase of an undivided leasehold working interest in certain leases and the drilling of an oil and gas well (now known as the Hooker # 1 Well). Browning Oil responded to interrogatories that Mr. Kirschner was not its employee after raising general objections.
Even if the above evidence is sufficient to find that Mr. Kirschner was not employed with regard to Hooker # 1 Well, there is no evidence as to whether self-employment was involved. National Surety also offered no evidence as to whether Mr. Kirschner had any employees.
On appeal, National Surety attempts to address the issue that Mr. Kirschner was not an employee of Hooker Well # 1 by relying on the affidavit of Jill Kirschner, his wife, which was offered by Texas Brine in opposition to National Surety's motion for summary judgment. Mrs. Kirschner testified by affidavit, that Mr. Kirschner was elderly and had a medical condition which affected his memory. Mrs. Kirschner testified that she was aware that Mr. Kirschner purchased some interest in an oil and gas lease located in Louisiana, which is where Hooker # 1 Well is located. Mr. Kirschner signed the Lease Agreement on December 16, 1985. Mrs. Kirschner admitted that the Lease Agreement was signed before she met Mr. Kirschner and that she had no personal knowledge of the lease or the purchase. She also testified that when she and Mr. Kirschner met, he was employed as a broker who sold bonds to banks or to savings and loans. She stated that is was her understanding that he was not licensed to sell "equities" nor oil and gas interests. She further stated that he never earned his livelihood in the oil and gas business. Mrs. Kirschner testified that as far as she was aware, Mr. Kirschner did not have any employees with regard to the oil and gas lease he owned in Louisiana. She further asserted that "[t]he best information I have been able to find" was that Mr. Kirschner "once owned a small fractional interest in the Louisiana oil and gas lease," but "never went to Louisiana in this regard, and was never consulted by any operator or other person about decisions regarding such lease or any wells thereon."
The record reveals that there was no objection made to the affidavit of Mrs. Kirschner, and therefore, it must be considered by the court. La. C.C.P. art. 966(D). However, as we stated earlier, affidavits offered in support of or in opposition to a motion for summary judgment *1104 shall be made on personal knowledge and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Schexnaildre, 184 So.3d at 116, citing La. C.C.P. art. 967(A) ; Mapp Construction, LLC, 29 So.3d at 563-64. Personal knowledge encompasses only those facts that the affiant saw, heard, or perceived with his own senses. Berard, 35 So.3d at 349. The affidavit of Mrs. Kirschner does not reveal that she had personal knowledge of Mr. Kirschner's activities with regard to the Lease Agreement and does not address whether he was self-employed in this venture. Therefore, even considering the affidavit of Mrs. Kirschner, there exists genuine issues of material fact regarding the exception to the business activities exclusion.
Apparently recognizing that there was no evidence as to the incidental business exception of the business activities exclusion, on January 17, 2017, National Surety filed a motion for leave to supplement the record and for judicial notice, noting that the motion for summary judgment hearing was set for February 1, 2017. National Surety claimed that on January 12, 2017, documents were produced to it by Texas Brine and attached a third affidavit of Mr. Lemoine. This third affidavit of Mr. Lemoine attaches a "true and correct copy of an email" from Christopher T. Chocheles, an attorney representing Texas Brine; "a true and correct copy of documents [Texas Brine] produced on January 12, 2017"; and "a true and correct copy of data from the United States Energy Information Administration on dollars per barrel for crude oil prices" (all referred to as secondary documents). National Surety claimed that the documents were late-produced by Texas Brine and that the trial court could take judicial notice of the crude oil prices. Exhibit 1 is an email from an attorney on the case to a number of different people regarding the upcoming deposition of Mike Veazey and documents he would presumably have at the deposition. Exhibit 2 appears to be documents that Mr. Veazey would rely upon at the deposition. As we discussed above, affidavits offered in support of or in opposition to a motion for summary judgment shall be made on personal knowledge and shall show affirmatively that the affiant is competent to testify on the matters stated therein. Schexnaildre, 184 So.3d at 116.
Texas Brine did file an opposition to the motion to supplement the record and for judicial notice. Texas Brine claimed that all documents had to be filed "with" the motion for summary judgment and that the supplemental documents were not filed until January 16, 2017. La. C.C.P. art. 966(B)(1). As to Exhibits 1 and 2, Texas Brine objected as to the timeliness, relevance, and accuracy of the documents. Texas Brine also asserted that judicial notice of the crude oil prices was improper.
The motion for summary judgment and all documents in support must be filed and served on all parties not less than 65 days prior to the trial. La. C.C.P. art. 966(B)(1). Any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing on the motion. La. C.C.P. art. 966(B)(2). Any reply memorandum shall be filed and served in accordance with Article 1313 not less than five days prior to the hearing on the motion. No additional documents may be filed with the reply memorandum. La. C.C.P. art. 966(B)(3). As to the timing, nothing in La. C.C.P. art. 966 forbids a moving party from filing permissible documents as long as they are served 65 days prior to trial. There is nothing in the record evidencing that any trial date was ever set in this matter. Therefore, the trial court did not err in permitting the *1105 filing of the documents attached to the third affidavit.
However, the documents attached to the third affidavit must be competent summary judgment evidence. As we are conducting a de novo review, we note that attaching documents to an affidavit of an attorney on the case, not the keeper of the records, and designating the records as a "true and correct copy" does not authenticate, certify, or make them admissible. Exhibits 1 and 2 attached to Mr. Lemoine's third affidavit are not competent summary judgment evidence. Exhibit 1 is a copy of an email from Christopher T. Chocheles, an attorney representing Texas Brine. The email was sent to numerous individuals, including Mr. Lemoine, and stated that Mr. Chocheles was attaching documents to be used by Mike Veazey at a deposition the following day. Exhibit 2 appears to be documents that Mike Veazey purported to use at his deposition. These documents are not authenticated and, therefore, are hearsay. See La. C.E. arts. 901(A) & (B)(1); La. C.E. arts. 801 & 802; see also Bach v. Board of River Port Pilot Commissioners, 2015-765 (La. App. 5 Cir. 5/12/16), 193 So. 3d 355, 370 (explaining that the recipient of a letter attached to an email was not the proper witness to authenticate the letter, particularly since he was not the author). No deposition of Mr. Veazey is attached. This court cannot determine if Mr. Veazey ever testified by deposition or if he actually referred to Exhibit 2; and further, there is no explanation as to the information contained therein. Therefore, we do not consider any of the documents listed as Exhibits 1 and 2 attached to the third affidavit of Mr. Lemoine.
The parties argue concerning the requirement of the incidental business exception with regard to whether the Hooker # 1 Well produced a gross annual income of less than $10,000 in cash or value. National Surety's argument is that the incidental demand against Mr. Kirschner states that between 1986 and July 2, 2001, the Hooker # 1 Well extracted 208,076 barrels of oil and 128,745 m.c.f. of natural gas. National Surety then argues that the crude oil prices it attached to Mr. Lemoine's third affidavit, Exhibit 3, prove that Hooker # 1 Well grossed more than $10,000 annually, and thus was not an incidental business. Texas Brine counters that judicial notice of the crude oil prices is not proper as it does not qualify as being "not subject to reasonable dispute in that it is ... [c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." La. C.E. art. 201(B). Texas Brine also contends that the crude oil prices produced by National Surety may be evidence of how much the Hooker # 1 Well made, but the court would still have to extrapolate how much Mr. Kirschner, the insured, grossed annually.
Exhibit 3 is a "copy of data from the United States Energy Information Administration on dollars per barrel for crude oil prices." Besides the testimony of Mr. Lemoine that this is a "true and correct copy," there is no authentication or certification of this document. See La. C.E. arts. 901(A) & (B)(1). National Surety requested the trial court to take judicial notice of the crude oil prices provided in Exhibit 3. Texas Brine argued at the trial court level and on appeal that judicial notice of Exhibit 3 is improper based on La. C.E. art. 201(B).
Louisiana Code of Evidence article 201 provides, in pertinent part:
B. Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either:
(1) Generally known within the territorial jurisdiction of the trial court; or *1106 (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
Pursuant to this article, courts may properly take judicial notice only of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence. Perez v. Evenstar, Inc., 2012-0941 (La. App. 4 Cir. 1/30/13), 108 So.3d 898, 905. We recognize that courts routinely take notice of public market prices, data and trends. See, e.g., In re VeriFone Sec. Litig., 784 F.Supp. 1471, 1475 n.2 (N.D. Cal. 1992), aff'd, 11 F.3d 865 (9th Cir. 1993) (taking judicial notice of the daily closing prices of common stock); In re Avista Corp. Sec. Litig., 415 F.Supp.2d 1214, 1217-18 (E.D. Wash. 2005) (noting that "taking judicial notice of well-publicized stock prices and general market trends is permissible in a motion to dismiss" and taking judicial notice of Dow Jones Utility Average, a publicly price-weighted index of the fifteen largest, most-liquid New York Stock Exchange-listed utility stocks); Plevy v. Haggerty , 38 F.Supp.2d 816, 821 (C.D. Cal. 1998) (contents of tabular representation of corporation's stock price proper subject matter of judicial notice); Trevino v. United States, 804 F.2d 1512, 1518 (9th Cir. 1986) (taking judicial notice that 1974-1982 were "aberrational" years, marked by double-digit inflation and extreme oil prices, and thus should not be used by court as standard to adjust award of damages to predict effects of inflation). However, even if we agreed with the trial court that judicial notice of the crude oil prices could be taken, the evidence submitted by National Surety does not preclude a finding of genuine issue of material fact.
It is undisputed that Mr. Kirschner owned a 2.250% interest in the Hooker # 1 Well. The Hooker # 1 Well began operation in 1986. It was plugged and abandoned in 2010, but the extraction of oil and gas ceased in August 2001. National Surety asserts that the allegation that 208,076 barrels were extracted between 1986 and July 2, 2001, is sufficient to determine that Hooker # 1 Well, rather than Mr. Kirschner, grossed more than $10,000 annually. The crude oil price information submitted by National Surety is for a yearly average beginning 1996. There is no information for the years 1986-1995. There has been no summary judgment evidence as to the number of barrels of oil or the amount of gas extracted each year. Exhibit 3 does not provide information as to the price of gas for any year. The Primary policy provides that the self-employment or employment must produce less than $10,000 a year to the insured for the exception to apply. With no information as to how many barrels were extracted a year, a court cannot determine how much Mr. Kirschner grossed annually. For instance, if only 10,000 barrels of oil were extracted in 1998 when oil was $10.87 a barrel, the Hooker # 1 Well would have only made $108,700 that year. Mr. Kirschner's 2.250% interest would have been worth $2,445.75 for that year, which is far less than $10,000. With no information other than the allegation that 208,076 barrels of oil were extracted between 1986 and July 2, 2001, we cannot make the leap that Mr. Kirschner grossed more than $10,000 annually from this well.
National Surety urges this court to determine that the Hooker # 1 Well made over $10,000 annually from these figures. However, a plain reading of the Primary policy defines an incidental business as "self-employment or other employment of any insured ..." (emphasis in original). Mr. Kirschner is the insured of the policies at issue, not Hooker # 1 Well. When the words of the insurance contract are clear *1107 and unambiguous, the contract must be enforced as written. Bernard , 111 So.3d at 1002.
There are genuine issues of material fact as to whether the incidental business exception to the business activities exclusion applies, and the granting of the motion for summary judgment is not appropriate at this time. National Surety did not carry its burden of proving that the exception to the exclusion does not apply. Thus, the burden never shifted to Texas Brine pursuant to La. C.C.P. art. 966(D)(1). Therefore, this court pretermits any discussion of the adequacy of the evidence submitted by Texas Brine. Based upon the evidence before us, we cannot determine that the incidental business exception to the business activities exclusion does not apply. Therefore, we must reverse the trial court's granting of the summary judgment as there are genuine issues of material fact.
CONCLUSION
For the above and foregoing reasons, the June 28, 2017 amended judgment granting summary judgment on behalf of appellee/third-party defendant, National Surety Corporation and dismissing the claims of appellant/third-party plaintiff, Texas Brine Company, LLC, is reversed. The case is remanded to the trial court for further proceedings. All costs of this appeal are assessed against appellee/third-party defendant, National Surety Corporation.
REVERSED AND REMANDED; WRIT DISMISSED AS MOOT.
Holdridge J. concurs for reasons assigned
Higginbotham J. concurs

We note that Sol Kirschner, third-party plaintiff, appealed the original judgment dated April 20, 2017. Mr. Kirschner has filed a brief as an appellant adopting by reference the brief of Texas Brine. However, although Texas Brine appealed the amended judgment dated June 28, 2017, at issue in this matter, the record contains no appeal of the amended judgment by Mr. Kirschner. Therefore, we refer only to Texas Brine as the appellant.

Hooker Chemical & Plastics Corp. was the predecessor in interest to Oxy.

Texas Brine had previously amended its incidental demands to name several insurers as third-party defendants, but National Surety was not made a third-party defendant at that time.

The record before this court contains only the minutes from the February 1, 2017 hearing and not the transcript, which was not designated as part of the record by the appellant.

A trial court is divested of its jurisdiction over all matters in cases that are reviewable under the appeal when the order of devolutive appeal is granted. La. C.C.P. art. 2088. The jurisdiction of the appellate court attaches on the granting of the order of appeal; the order of appeal is premature if it is granted before the trial court disposes of all timely filed motions for new trial. La. C.C.P. arts. 2088(A), 2087(D). Our courts have recognized that a pleading, regardless of its caption, constitutes a motion for new trial if it requests a substantive modification of the judgment and is filed within the delays applicable to a motion for new trial. Lane v. Lane, 2015-1572, at *3 (La. App. 1 Cir. 2/26/16) 2016 WL 770832 (unpublished), citing, Katz v. Katz, 412 So.2d 1291, 1293 (La. 1982) (holding that a motion to amend a judgment to add language dismissing certain defendants constituted a motion for new trial); Town of Vinton v. Sonnier, 98-676 (La. App. 3 Cir. 10/28/98), 721 So.2d 992, 994, writ denied, 98-2972 (La. 1/29/99), 736 So.2d 836 (finding that a petition to modify a judgment was a motion for new trial); see also Rawls v. Domeray, 353 So.2d 414, 416 (La. App. 4 Cir. 1977) (rule to set aside a summary judgment deemed to be a motion for new trial); Pouncy v. Winn-Dixie Louisiana, Inc., 2014-496 (La. App. 5 Cir. 9/24/14), 150 So.3d 909, 912 (motion for reconsideration treated as a motion for new trial). Consequently, we treat the motion to amend the judgment as a motion for new trial, which the trial court did dispose of on June 28, 2017. Therefore, the order of devolutive appeal was not premature and we maintain jurisdiction over the amended judgment.

The motion for summary judgment granted in this matter is not one granted under La. C.C.P. art. 966(E) since it does, in fact, dismiss a party from an action. Louisiana Code of Civil Procedure Article 966(E) provides that a "summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties."

Louisiana Code of Civil Procedure Article 966 was amended by Acts 2015, No. § 422, and was effective January 1, 2016, so the amendment applies in this case since the motion for summary judgment was filed on January 6, 2017.

From the deposition excerpts provided it is impossible to tell for whom Mr. Caldwell was testifying or his position with any firm.