GUIDRY, J.
Cabana Partners, LLC ("Cabana Partners") appeals a final judgment granting Citizens Bank & Trust Company's ("Citizens Bank") motion for summary judgment. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Cabana Partners is a limited liability company organized under the laws of Louisiana. On or about February 16, 2011, Cabana Partners created an operating checking account called the Cabana Account at Citizens Bank. The Cabana Account reflected that Len Kola ("Kola") and George Allen Roth Walsh ("Walsh") were authorized signers on the account. Kola was the manager and a member of Cabana Partners, and Walsh was the designated agent for Cabana Partners.
On or about July 24, 2012, Cabana Partners, through Kola, sent an email notifying Citizens Bank that the relationship between Cabana Partners and Walsh had become adversarial, and Cabana Partners was concerned about being sabotaged by Walsh. Nearly four years later, on July 14, 2016, Walsh directed, via telephone, that $125,000.00 be transferred from the Cabana Account to the CG Walsh Account at Citizens Bank.
On August 2, 2017, Cabana Partners filed a petition for damages against Citizens *989 Bank, alleging that Citizens Bank acted negligently by allowing Walsh to conduct transactions on the Cabana Account, despite the July 24, 2012 written notice. Cabana Partners further alleged that Citizens Bank was at fault for allowing Walsh to conduct transactions on the Cabana Account by telephone without requiring a signature, which resulted in the loss of $125,000.00 from the Cabana Account.
In response to the petition, Citizens Bank filed a motion for summary judgment,[1] wherein it sought to be absolved from liability. Citizens Bank asserted that Walsh was listed as an authorized signatory on the signature card at Citizens Bank when the requested withdrawal was made from the Cabana Account. Citizens Bank further asserted that Cabana Partners did not provide written notification that Walsh's authority had been terminated prior to the transaction. Following a hearing on the motion for summary judgment, the trial court granted the motion and dismissed Cabana Partners' suit with prejudice. Cabana Partners now appeals.
ASSIGNMENTS OF ERROR
In this appeal, Cabana Partners alleges the trial court committed the following errors:
1. The trial court erred in granting summary judgment because there was a genuine issue of material fact as to whether Walsh was authorized to withdraw funds from the account by telephone.
2. The trial court erred in granting summary judgment because there was a genuine issue of material fact as to whether Citizens Bank was notified that Walsh's authority to withdraw funds from the account had been revoked.
DISCUSSION
Summary Judgment
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there are no genuine factual disputes. Diversified Marine Services, Inc. v. Jewel Marine, Inc., 16-0617, p. 7 (La. App. 1st Cir. 6/2/17), 222 So.3d 1008, 1013. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.[2] La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written *990 stipulations, and admissions. La. C.C.P. art. 966(A)(4).
On appeal, a motion for summary judgment is subject to de novo review, using the same standards applicable to the trial court's determinations of the issues. Neighbors Federal Credit Union v. Anderson, 15-1020, p. 9 (La. App. 1st Cir. 6/3/16), 196 So.3d 727, 733. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 p. 26 (La. 7/5/94), 639 So.2d 730, 750.
ASSIGNMENT OF ERROR # 1
Authority to Authorize a Transfer by Telephone
In its first assignment of error, Cabana Partners disputes the trial court's finding that there were no genuine issues of material fact regarding Walsh's authorization to withdraw funds from the Cabana Account by telephone. Cabana Partners argues that Walsh's authority as its agent allowed him to only transact business on the account by affixing his signature. Cabana Partners relies on La. C.C. art. 3020, when presenting its argument of liability. Article 3020 provides that the principal is bound to perform the contracts the mandate establishes with a third party when the mandate is acting within the limits of his authority. The essential question before this Court is whether Walsh was acting within the limits of his authority when he transferred $125,000.00 from the Cabana Account to the CG Walsh Account by telephone.
According to La. C.C. art. 2989, a mandate is a contractual relationship where the principal confers authority upon the agent to transact affairs on its behalf. The contract of mandate is not required to be in any particular form, except when the law prescribes a certain form. La. C.C. art. 2993. Pursuant to the Uniform Commercial Code, the rules governing the transfer of funds are set forth in the chapter titled "Funds Transfer." See La. R.S. 10:4A-101 to 4A-507. "Funds transfer" means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order. La. R.S. 10:4A-104(a).
A payment order is an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary. La. R.S. 10:4A-103. The authorization of payment orders are set forth in La. R.S. 10:4A-202, which provides in pertinent part:
(a) A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.
(b) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against unauthorized *991 payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer. The bank is not required to follow an instruction that violates a written agreement with the customer or notice of which is not received at a time and in a manner affording the bank a reasonable opportunity to act on it before the payment order is accepted.
(c) Commercial reasonableness of a security procedure is a question of law to be determined by considering the wishes of the customer expressed to the bank, the circumstances of the customer known to the bank, including the size, type, and frequency of payment orders normally issued by the customer to the bank, alternative security procedures offered to the customer, and security procedures in general use by customers and receiving bank similarly situated. A security procedure is deemed to be commercially reasonable if (i) the security procedure was chosen by the customer after the bank offered, and the customer refused, a security procedure that was commercially reasonable for that customer, and (ii) the customer expressly agreed in writing to be bound by any payment order, whether or not authorized, issued in its name and accepted by the bank in compliance with the security procedure chosen by the customer.
(d) The term "sender" in this Chapter includes the customer in whose name a payment order is issued if the order is the authorized order of the customer under Subsection (a), or it is effective as the order of the customer under Subsection (b).
In the present case, Walsh was the sender and Citizens Bank was the receiving bank. The payment order at issue was the telephone transaction between Walsh and Citizens Bank for the fixed amount of $125,000.00. The Limited Liability Company Banking Resolution Agreement ("Banking Resolution")[3] between Cabana Partners and Citizens Bank authorized both Walsh and Kola as individuals to sign payment orders for Cabana Partners. The Banking Resolution also states:
[A]ny one (1) of the Authorized Signers ("Agents") listed above may enter into any such agreements and perform such other acts as they deem reasonably necessary to carry out the provisions of the Agreement with [Citizens Bank], and those agreements will bind [Cabana Partners], and acting for and on behalf of [Cabana Partners] and as its act and deed be, and they hereby are, authorized and empowered:
...
The above named agents are authorized and empowered to execute such other agreements including but not limited to special depository agreements and arrangements regarding the manner, conditions or purposes for which funds, checks or items of Account Holder may *992 be deposited, collected or withdrawn and to perform such other acts as they deem reasonably necessary, to carry out the provisions of these resolutions. The other agreements and other acts may not be contrary to the provisions contained in this Resolution.
The Banking Resolution further explains that the authority conferred to an agent upon signing the agreement "shall be and remain in full force and effect until written notice of any amendment or revocation thereof shall have been delivered to and received by [Citizens Bank].[4]
Additionally, the Deposit Account Agreement and Disclosure provided by Citizens Bank articulates the manner in which withdrawals and transactions on an account should be handled.[5] Under the "Withdrawal Rules" section of the Deposit Account Agreement and Disclosure, it states in pertinent part:
(A) Manner of Withdrawal. You [defined in the first paragraph of the form as "each and all of the depositors"] may make withdrawals from your Account in any manner that is permitted by us for the type of Account that you have opened.
...
(G) Signatures. You recognize that we have adopted automated collection and payment procedures so that we can process the greatest volume of items at the lowest possible cost to our customer. In light of this, you agree that we do not fail to exercise ordinary care in paying an item solely because our procedures do not provide for the sight examination of items with a face amount below an amount specified by us from time to time. You authorize us to store and use Signature Card information in any reasonable form we deem necessary, including any digitized signature capture process.
Cabana Partners relies on the Banking Resolution and a Case Management Agreement to contend that Walsh was specifically prohibited from conducting account transactions without affixing his signature. The Case Management Agreement was between Cabana Partners and Citizens Bank. The provisions of those documents refer to specific types of transactions, such as the endorsement of checks, drafts, notes, and e-banking; however, none of those provisions relate to the transaction at issue: the verbal transfer of funds by phone. Neither the Banking Resolution nor the Case Management Agreement implicitly or explicitly prohibit a verbal transfer by phone. The Banking Resolution allows the agent broad discretion when acting on behalf of Cabana Partners. Furthermore, the Case Management Agreement only indicates that neither Walsh nor Kola were authorized to perform account transfers through the online portal of E-Banking.
Louisiana Revised Statute 10:4A-202(b) places the risk of loss on the customer if a payment order is accepted by a receiving bank after verification by the bank in compliance with a commercially reasonable security procedure. A payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if: 1) the banking security procedure *993 is a commercially reasonable method of providing security against unauthorized payment orders; 2) the bank proves that it accepted the payment order in good faith; and 3) the bank proves it complied with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer. La. R.S. 10:4A-202(b).
Cabana Partners does not dispute or challenge whether the procedure followed by Citizens Bank was commercially reasonable. The standard for determining whether a bank has acted in good faith is if fraud was not detected because the bank's employee failed to perform acts required by the security procedure. La. R.S. 10:4A-203, Comment 3.
In his affidavit, James R. Purgerson, the Senior Vice President of Citizens Bank, explained the procedure for approving telephone requests from customers. He stated that Citizens Bank employees are instructed to only approve telephonic transaction requests if the customer is known to the employee by voice, provides sufficient proof of identity to the employee, and the person is authorized to conduct the transaction according to the record of the bank. In her deposition, Kelly Alberado, the Citizens Bank employee that processed Walsh's funds transfer request, testified that she was familiar with Walsh from prior business transactions. And although Alberado did not state, in the excerpts of her deposition submitted into evidence, whether she followed the procedure outlined by Purgerson, Purgerson stated in his affidavit that "Ms. Alberado's action in allowing the transfer of funds was ... entirely proper and in accordance with the rules, regulations, policies, and procedures governing checking accounts at Citizens Bank."
The documentation possessed by Citizens Bank indicated that Walsh had actual authority to transact business telephonically because the Banking Resolution granted the agent discretion in "performing any such acts they deem reasonably necessary to carry out the provisions of the Agreement." Also, the signature card conferred the agent actual authority to act on behalf of Cabana Partners. The Deposit Account Agreement and Disclosure reiterates the broad discretion to make withdrawals on the account in "any manner" permitted for the type of account that has been opened. Thus, the record shows telephonic transactions were a permissible form of withdrawal of funds because there was not a limitation placed on using that specific method of transaction. Additionally, the Deposit Account Agreement and Disclosure grants Citizens Bank the authority of utilizing the signature card information in any method that they deem reasonable. The signature card coupled with the aforementioned documentation sufficiently established Walsh's authority to transact business on the Cabana Account by telephone and none of the evidence offered by Cabana Partners refuted this showing. We therefore find no genuine issues of material fact regarding Walsh's authority to withdraw funds from the Cabana Account by telephone. This assignment of error is without merit.
ASSIGNMENT OF ERROR # 2
Termination of Mandate Authorization
In its second assignment of error, Cabana Partners contends that the trial court erred in granting summary judgment because a genuine issue of material fact exists as to whether Citizens Bank was notified that Walsh's authority to withdraw funds from the account was revoked. Cabana Partners argues that the July 24, 2012 email sent by Kola on behalf of Cabana Partners was sufficient notification *994 that Walsh's authority had been terminated. The email reads as follows:
Ms. Miller,
As a follow up to our discussion, due to the adversarial nature that exists between Cabana Partners, LLC and Roth Walsh, we need to have the following done asap in order to move forward without the possibility of being sabotaged[:]
1) I need the address for any correspondence, checks, etc having to do with our two accounts changed ...
2) Peggy Ernest, TW Kleinpeter and Roth Walsh need to be removed from receiving any notice or telephone correspondence for our accounts
3) need the date that last blank checks were sent to Napoleon Street
4) reversal of our telephone payment to Entergy that was rescinded by Roth Walsh this morning
Under Louisiana law, the principal may terminate the mandate and the authority of the mandatary at any time. La. C.C. art. 3025. The principal must notify third persons with whom the mandatary was authorized to contract of the revocation of the mandate or of the mandatary's authority. If the principal fails to do so, he is bound to perform the obligations that the mandatary has undertaken. La. C.C. art. 3028.
In the present case, Citizens Bank appropriately relied on the signature card, the Banking Resolution, the Deposit Account Agreement and Disclosure, and the Cash Management Agreement regarding Walsh's authority to transact business. The language in the Banking Resolution regarding the revocation of an agent's authority reads as follows:
BE IT FURTHER RESOLVED, that the authority hereby conferred upon the above named Agents shall be and remain in full force and effect until written notice of any amendment of revocation thereof shall have been delivered to and received by [Citizens Bank] at each location where an account is maintained. [Citizens Bank] shall be indemnified and held harmless from any loss suffered or any liability incurred by it in continuing to act in accordance with this resolution. Any such notice shall not affect any items in process at the time notice is given.
The Deposit Account Agreement and Disclosure further clarifies the agreement established between the parties regarding notification of any changes to authorized personnel on the account. The Deposit Account Agreement and Disclosure reads, in pertinent part, as follows:
(6) Business Accounts. If the Account is not owned by a natural person (for example, it is owned by a ... limited liability company ...), then the Account Holder must provide us with evidence to our satisfaction of the authority of the individuals who sign the signature card to act on behalf of the Account Holder. On any transaction involving the Account, we may act on the instructions of the person(s) authorized in the resolutions, banking agreement, or certificate of authority to act on behalf of the Account Holder. You agree to notify us in writing of any changes in the person(s) authorized or the form of ownership. If we receive conflicting instructions or a dispute arises as to authorization with regard to the handling of the Account, you agree we may place a hold on the Account until such conflict or dispute is resolved to our satisfaction and we will not be liable for dishonored items as a result of such hold.
The record reflects that Kola properly revoked Walsh's authority only after the July 14, 2016 transaction was made. Cabana Partners did not communicate in the *995 July 24, 2012 email to Citizens Bank a revocation or termination of Walsh's authority to withdraw funds from the Cabana Account. The July 24, 2012 email merely informed Citizens Bank of an adversarial relationship between Cabana Partners and Walsh and only requested action as to Walsh regarding his receiving information about the account and as to a telephone payment to Entergy that was rescinded by Walsh.
Cabana Partners did not terminate Walsh's authority to withdraw funds on the account until July 27, 2016. On July 27, 2016, Kola completed an Account Maintenance form and executed a notarized statement that removed Walsh as an authorized signer on the Cabana Account. The record reflects that Cabana Partners did not comply with Citizens Bank's termination policy by providing the necessary written notice to eradicate Walsh's authority as an agent until July 27, 2016. Therefore, Cabana Partners's remaining assignment of error is also without merit.
CONCLUSION
Accordingly, for the reasons set forth above, we affirm the November 13, 2017 summary judgment in favor of Citizens Bank & Trust Company. All costs of this appeal are cast to the appellant, Cabana Partners, LLC.
AFFIRMED.

While La. C.C.P. art. 966(A)(1) states that a plaintiff must wait until after the answer has been filed to file a motion for summary judgment, "[a] defendant's motion may be filed at any time." See Edwards v. Larose Scrap & Salvage, Inc., 11-1412, pp. 6-7 (La. App. 3d Cir. 4/4/12), 89 So.3d 1227, 1232, writ denied, 12-1510 (La. 10/12/12), 98 So.3d 870.

It is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 7 (La. App. 1st Cir. 9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La. 12/18/98), 734 So.2d 637.
A "material fact" is one that potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A "genuine issue of material fact" is a material fact about which reasonable people can disagree; if reasonable people can reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Moore v. Chevron USA, 16-0805, p. 3 (La. App. 1st Cir. 5/25/17), 222 So.3d 51, 54, writ denied, 17-1085 (La. 10/16/17), 228 So.3d 1221.

The Banking Resolution and several other documents referred to in this opinion were authenticated in the affidavit of James Purgerson, Senior Vice President of Citizens Bank, and thus, are competent summary judgment evidence. See Cupit o/b/o Cupit v. Twin City Fire Insurance Co., 17-918, p. 8 (La. App. 3d Cir. 3/14/18), 240 So.3d 993, 999-1000. But cf. LaBarre v. Occidental Chemical Company, 17-1370, pp. 20-21 (La. App. 1st Cir. 6/4/18), 251 So.3d 1092, 1105.

It should be noted that Citizens Bank, Cabana Partners, and Cabana Partners's designated signers agreed to the terms and conditions of the Banking Resolution.

The copy of the Deposit Account Agreement and Disclosure provided by Citizens Bank lists the generic company name of "DOE Business LLC" as "depositor." In email correspondence between Kola and Diana Weems, a vice president and branch manager with Citizen's Bank, Weems explains that the original Deposit Account Agreement and Disclosure is given to the account holder at the time of opening the account.